ATTORNEY FOR APPELLANT
John A. Kindley
Lakeville, Indiana

ATTORNEYS FOR APPELLEE
Gregory F. Zoeller
Attorney General of Indiana

George P. Sherman
Deputy Attorney General
Indianapolis, Indiana



FILED

Sep 24 2014, 1:34 pm

CLERK
of the supreme court,
court of appeals and
tax court

# In the
# Indiana Supreme Court

No. 20S05-1405-CR-339

SCOTT LOGAN,

*Appellant (Defendant below),*

v.

STATE OF INDIANA,

*Appellee (Plaintiff below).*

Appeal from the Elkhart Superior Court, No. 20D03-0907-FC-00018
The Honorable George W. Biddlecome, Judge

On Petition to Transfer from the Indiana Court of Appeals, No. 20A05-1304-CR-192

**September 24, 2014**

**David, Justice.**

"To no one will we sell, to no one deny or delay right or justice." MAGNA CARTA, § XXIX. First articulated in the Magna Carta, the right to a speedy trial is fundamental in our jurisprudence.[1] Klopfer v. North Carolina, 386 U.S. 213, 223 (1967). Together with Indiana Criminal Rule 4(C), the right to a speedy trial, as guaranteed by the United States and Indiana Constitutions, ensures those accused of criminal charges speedy administration of justice. In this case, appellant Scott Logan challenges the 1,291-day delay that elapsed between the State's filing of a class C felony child molestation charge against him and the beginning of his trial as a violation of both Rule 4(C) and his constitutional right to a speedy trial. Ultimately, Logan was convicted and sentenced to six years executed—a sentence that, when his earned good-time credit is considered, Logan essentially served before his trial even began.

Though Rule 4(C) implements a defendant's right to a speedy trial, our analysis of an alleged Rule 4(C) violation is distinct from that of a claimed constitutional violation, as both constitutions provide a defendant with broader protection of this fundamental right. Illustrating why Indiana affords defendants dual means of securing a speedy trial, here we conclude that despite the trial court's technical compliance with Rule 4(C), Logan's unduly long delay violated his constitutional right to a speedy trial.

## Facts and Procedural History

On July 31, 2009, the State charged Logan with class C felony child molestation[2] after his sixteen-year-old daughter accused him of fondling her earlier that year. He was arrested on August 7, 2009, and his bond was set at $50,000. The trial court held Logan's initial hearing on August 11, 2009. There, the trial court scheduled a pre-trial conference for October 22, 2009,

---

[1] The Court also cited English jurist Sir Edward Coke's belief that "delay in trial, by itself, would be an improper denial of justice." Klopfer v. North Carolina, 386 U.S. 213, 224 (1967).

[2] Ind. Code § 35-42-4-3 (2008) (now codified as Ind. Code § 35-42-4-3 (effective July 1, 2014)).

and set an omnibus hearing for November 5, 2009. Logan requested a bond reduction, and the trial court ordered the Probation Department to prepare a Bail Review Pre-trial Release Report. Although in their report the Probation Department noted that Logan could post a $10,000 bond and in fact recommended that his bond be reduced to $5,000, the trial court denied Logan's request on September 3, 2009.

At his October 22 pre-trial conference, Logan requested a continuance of his pre-trial conference until November 12, 2009, and the trial court granted his request. Then on November 12, Logan filed a motion for a continuance, and the trial court continued his pre-trial conference to December 10, 2009. On December 11, pursuant to Logan's motion, the trial court again continued his pre-trial conference to January 14, 2010. Similarly, on January 13, the trial court granted Logan's motion to continue his pre-trial conference and re-scheduled the matter for February 11, 2010. Once more, on February 11, Logan filed a motion to continue, the trial court granted his motion, and his pre-trial conference was continued until March 25, 2010.

After five continuances, the trial court held Logan's pre-trial conference on March 25, and the parties agreed to a November 8, 2010 jury trial date. But on October 28, the State filed a motion to continue Logan's jury trial due to court congestion. Six days later, the trial court granted the State's motion, vacated the November 8 trial date, and scheduled a pre-trial conference for December 16, 2010.

On December 7, 2010, Logan filed a motion to be released from jail on his own recognizance. As such, on December 16, the trial court held both Logan's scheduled pre-trial conference and a hearing on his motion for release. Pursuant to the parties' agreement, the trial court set Logan's jury trial for January 24, 2011. Additionally, the parties agreed that the trial court would rule on Logan's motion within fifty days.

Then on January 18, 2011, the State filed a second motion to continue Logan's trial due to court congestion. Granting the State a continuance, the trial court vacated the January 24 trial date and scheduled a pre-trial conference for February 24, 2011.

Subsequently, on February 22, 2011, the trial court denied Logan's motion for release on his own recognizance. At his February 24 pre-trial conference, Logan filed a motion for discharge pursuant to Ind. Crim. Rule 4(C). By agreement of the parties, his jury trial was set for June 20, 2011. On March 9, 2011, the trial court denied Logan's motion for discharge.

Three months later, on June 8, 2011, the State filed another motion to continue Logan's trial due to court congestion. The trial court granted the State's motion on June 10 and accordingly scheduled a pre-trial conference for July 14, 2011. At the July 14 pre-trial conference, the trial court yet again denied Logan's request to be released on his own recognizance. Both parties advised the trial court that discovery was complete and that no other issues needed to be addressed before trial. Consequently, the trial court set Logan's jury trial for August 22, 2011.

But on August 15, 2011, the trial court, on its own motion, vacated the August 22 trial date due to court congestion, specifically another jury trial, and scheduled a pre-trial conference in this case for September 15, 2011. On September 15, Logan filed a motion to dismiss the charge against him based on an alleged violation of his constitutional right to a speedy trial. His pre-trial conference was also held as scheduled on September 15, and there he once again requested to be released on his own recognizance pursuant to Rule 4(C). The trial court set a hearing for October 6, 2011, for arguments on Logan's motion to dismiss and his oral motion for discharge, and it also set Logan's jury trial for February 6, 2012. Following the October 6 hearing, the trial court denied both motions on November 1, 2011.

Due to another scheduled jury trial causing court congestion on February 6, the trial court vacated Logan's scheduled jury trial for that date on January 30, 2012, and scheduled a pre-trial conference for February 23, 2012. At the February 23 pre-trial conference, the trial court set Logan's jury trial for July 9, 2012, and Logan maintained that his continued incarceration violated his constitutional right to a speedy trial. In response, the trial court indicated that he should file a written motion.

Next, on May 1, 2012, Logan filed a petition for writ of mandamus and prohibition with this Court. While that was pending, on May 14 the trial court reset Logan's jury trial for June 4, 2012, and scheduled a corresponding pre-trial conference for May 24, 2012. At the May 24 pre-trial conference, the trial court confirmed the June 4, 2012 jury trial date.

Also on May 24, this Court granted in part Logan's writ of mandamus and prohibition and ordered that Logan be immediately released on his own recognizance but denied his request for discharge from prosecution under Rule 4(C) and for dismissal based on an alleged violation of his constitutional right to a speedy trial. State ex rel. Logan v. Elkhart Superior Court No. 3, 969 N.E.2d 590, 591 (Ind. 2012). Accordingly, the trial court ordered Logan released from jail the following day.

On May 30, 2012, the trial court scheduled a pre-trial conference for the next day; there, as a result of a previously scheduled trial set for June 24, the trial court continued Logan's jury trial to September 17, 2012. By its own motion, on September 11, 2012, the trial court again continued Logan's September 17 trial date due to court congestion. The following day, the trial court set Logan's pre-trial conference for September 27, 2012. Then at the September 27 pre-trial conference, the trial court scheduled Logan's jury trial for February 11, 2013.

Logan filed a motion for discharge on February 5, 2013. In his motion, he renewed his February 24, 2011 motion for discharge and his September 15, 2011 motion to dismiss. Following a hearing held on February 7, 2013, the trial court denied Logan's motion.

Over three-and-one-half years after he was taken into custody, Logan's jury trial for class C felony child molestation began on February 11, 2013. The next day, the jury found him guilty as charged. On March 7, 2013, the trial court sentenced Logan to six years in the Indiana Department of Correction.

On appeal, Logan maintained that he was entitled to discharge under Rule 4(C) and that he was deprived of his right to a speedy trial under the Sixth Amendment to the United States

Constitution and Article 1, Section 12 of the Indiana Constitution. Finding that the trial court did not err in denying Logan's motion for discharge under Rule 4(C) and that Logan failed to demonstrate that the delays in his trial violated his constitutional right to a speedy trial, the Court of Appeals affirmed his sentence. Logan v. State, No. 20A05-1304-CR-192, Slip. op. at *10 (Ind. Ct. App. February 28, 2014).

Logan subsequently petitioned this Court to address both issues. We granted transfer, thereby vacating the opinion below. See Ind. Appellate Rule 58(A).

**Discussion**

Although "Indiana Criminal Rule 4 generally implements the constitutional right of a criminal defendant to a speedy trial, thereby establishing time limits and providing for discharge in the event that limits are exceeded," Bridwell v. State, 659 N.E.2d 552, 553 (Ind. 1995), our review of Rule 4 challenges is "separate and distinct" from our review of claimed violations of the speedy trial rights secured by the Sixth Amendment of the U.S. Constitution[3] and Article 1, Section 12 of the Indiana Constitution. See Austin v. State, 997 N.E.2d 1027, 1037 n.7 (Ind. 2013). Because Rule 4(C) effectuates a defendant's constitutional right to a speedy trial, "[w]hen reviewing a claim for a violation of the right to a speedy trial, we ordinarily begin our analysis with Crim.R. 4." Sweeney v. State, 704 N.E.2d 86, 99 (Ind. 1998). Thus, we look first to Logan's Rule 4(C) claim.

### I.       Indiana Criminal Rule 4(C)

Indiana Criminal Rule 4(C) provides,

---

[3] And made applicable to the states by the Fourteenth Amendment. Klopfer, 386 U.S. at 222.

No person shall be held on recognizance or otherwise to answer a criminal charge for a period in aggregate embracing more than one year from the date the criminal charge against such defendant is filed, or from the date of his arrest on such charge, whichever is later; except where a continuance was had on his motion, or the delay was caused by his act, or where there was not sufficient time to try him during such period because of congestion of the court calendar; provided, however, that in the last-mentioned circumstance, the prosecuting attorney shall file a timely motion for continuance as under subdivision (A) of this rule. Provided further, that a trial court may take note of congestion or an emergency without the necessity of a motion, and upon so finding may order a continuance. Any continuance granted due to a congested calendar or emergency shall be reduced to an order, which order shall also set the case for trial within a reasonable time. Any defendant so held shall, on motion, be discharged.

Enacted "to provide functionality to a criminal defendant's fundamental and constitutionally protected right to a speedy trial," Ind. Crim. Rule 4 "places an affirmative duty on the State to bring the defendant to trial, but at the same time is not intended to be a mechanism for providing defendants a technical means to escape prosecution." Austin, 997 N.E.2d at 1037 (citations omitted).

Claiming that he was entitled to discharge under Rule 4(C), Logan challenges only one of the trial court's seven findings of congestion. According to Logan, on January 30, 2012, the trial court wrongly vacated his scheduled February 6, 2012 trial date in favor of another criminal case filed more than seven months after his.

In a May 15, 2012 affidavit submitted to supplement the record in Logan's original action, the trial court explained that Logan's February 6, 2012 trial date "was continued due to court congestion, specifically the trial of Mahamat A. Outman . . . . It should be noted that while Mr. Outman's case was filed after Mr. Logan's, Mr. Outman was in custody and demanded an

7

early trial pursuant to C.R. 4(B)."[4] (App. at 102, 104.) At the time, Logan was also in custody but had not filed a motion for an early trial.

Appellate courts review a trial court's finding of congestion for clear error. Austin, 997 N.E.2d at 1040 (citing State v. Oney, 993 N.E.2d 157, 161 (Ind. 2013)). In doing so, "[w]e neither reweigh the evidence nor determine the credibility of witnesses"; rather, we "consider only the probative evidence and reasonable inferences supporting the judgment and reverse only on a showing of clear error . . . [,] which leaves us with a definite and firm conviction that a mistake has been made." Austin, 997 N.E.2d at 1040 (quoting Oney, 993 N.E.2d at 161).

We begin with the presumption that the trial court's finding of congestion is valid. Clark v. State, 659 N.E.2d 548, 552 (Ind. 1995). "However, a defendant may challenge that finding, by filing a Motion for Discharge and demonstrating that, at the time the trial court made its decision to postpone trial, the finding of congestion was factually or legally inaccurate." Id. Ultimately, the defendant must demonstrate "that the finding of 'congestion' is clearly erroneous." Bridwell, 659 N.E.2d at 554.

Here, the Chronological Case Summary and the above-quoted affidavit show that the trial court continued Logan's February 6, 2012 trial date to July 9, 2012 because of another defendant's demand for an early trial pursuant to Rule 4(B). Challenging the trial court's factual basis for its decision to issue a continuance, Logan contends that "the priority given to Rule 4(B) requests applies only relative to cases that have not been pending more than one year and in which the Rule 4(C) deadline is not imminent. That is, Rule 4(B) does not trump Rule 4(C)."

---

[4] Ind. Crim. Rule 4(B) provides, in pertinent part: "[i]f any defendant held in jail on an indictment or an affidavit shall move for an early trial, he shall be discharged if not brought to trial within seventy (70) calendar days from the date of such motion, except where a continuance within said period is had on his motion, or the delay is otherwise caused by his act, or where there was not sufficient time to try him during such seventy (70) calendar days because of the congestion of the court calendar."

(Appellant's Br. at 11.)  Put differently, Logan claims that because the trial court should not have prioritized defendant Outman's case, there was no court congestion for his February 6 trial date, and thus the trial court's finding to the contrary was clearly erroneous.

In support, Logan quotes the following language from Clark:

> [u]pon an incarcerated defendant's request for a speedy trial, Criminal Rule 4(B) requires particularized priority treatment.  The rule is not satisfied merely by scheduling such a case for trial at the next date available for criminal cases or for cases generally.  Rather, it must be assigned a meaningful trial date within the time prescribed by the rule, if necessary superseding trial dates previously designated for civil cases and even criminal cases *in which Criminal Rule 4 deadlines are not imminent.*

659 N.E.2d at 551 (Appellant's Br. at 11 (emphasis his)).  Additionally, he relies upon Court of Appeals precedent: "[i]deally, the oldest cases should be tried first, those defendants with speedy trial requests given priority, and *no case left pending more than one year*."  Bridwell v. State, 640 N.E.2d 437, 439 (Ind. Ct. App. 1994) (emphasis his), affirmed in part and vacated in part by Bridwell v. State, 659 N.E.2d 552 (Ind. 1995).

In Austin, we addressed a trial court's prioritization of Criminal Rule 4 cases[5] and emphasized that "it is essential that courts honor requests made for speedy trials by scheduling trial dates within the time prescribed by the rule.  And we therefore have referred to this as a requirement that speedy trial motions receive particularized priority treatment."  997 N.E.2d at

---

[5] Though in Austin we discussed the defendant's Rule 4(B) motions, we made our reasoning and conclusion applicable to Rule 4(C): "[b]oth Criminal Rules 4(A) and 4(C) also contain language providing for continuances due to a congested calendar or emergency, and for then setting the trial within a reasonable time.  We see no reason why the analysis for those issues arising under those rules would— or should—be any different than the analysis under Rule 4(B).  Thus, our view is that this opinion's analysis in the context of Criminal Rule 4(B) should apply with equal force to Criminal Rules 4(A) and 4(C)." 997 N.E.2d at 1038 n.8.

9

1041 (internal citations and quotations omitted). Crucially, this requirement does not mean that a trial court must always prioritize a Rule 4(B) deadline over a Rule 4(C) deadline should the two conflict. Nor, as Logan would have us believe, does it imply that the trial court must only prioritize a Rule 4(B) case when a Rule 4(C) deadline is not imminent. Contrary to these extreme positions, "particularized priority treatment" merely requires the trial court, when setting his or her calendar, to make certain that a defendant who has filed a Rule 4(B) motion is tried within seventy calendar days. To effectuate this requirement, the trial court may have to reschedule other cases or otherwise change or modify its trial court calendar. For example, the trial court may have to reschedule previously set trial dates of later-filed Rule 4(B) cases, Rule 4(C) cases, or non-Rule 4 cases, all with their own deadlines, in order to accommodate the Rule 4(B) defendant.

Faced with Outman's Rule 4(B) motion and Logan's Rule 4(C) motion both scheduled to proceed on February 6, the trial court determined that the Rule 4(B) motion, with its seventy-day deadline, took precedence. By honoring Outman's request for an early trial, the trial court fulfilled its responsibility of securing particularized priority treatment for a speedy trial motion, and in the process necessarily delayed Logan's trial date. Under the circumstances of this case, Logan cannot demonstrate that the trial court's finding of congestion was factually inaccurate.

Moreover, as the State points out, "any defendant who is dissatisfied at the rate his case is proceeding to trial under Criminal Rule 4(C) due to findings of congestion of the court's calendar can file a Criminal Rule 4(B) motion." (Appellee's Br. at 9.) This Logan did not do; had he filed a Rule 4(B) motion for an early trial, perhaps as the older of the two cases he would have gone to trial before Outman. See Austin, 997 N.E.2d at 1043 ("though not necessarily always required, we find nothing wrong with the decision to prioritize the speedy trial request of a defendant who had been in custody for nearly two years over the request of one who had been in custody for a few months"). But having filed only a Rule 4(C) motion, Logan subjected himself to the trial court's pressure to accommodate Outman's Rule 4(B) motion and the likelihood that a scheduling conflict between the two would not be resolved in his favor. That the conflict resulted in a continuance of his trial date does not establish clear error by the trial

court or discharge Logan from prosecution. Though it led to a delay of 154 days, 109 of which Logan spent incarcerated, the trial court's decision to continue Logan's trial date due to court congestion complied with the court congestion exception that Rule 4(C) contemplates, as well as Rule 4(C)'s one-year deadline, and thus was not clearly erroneous.

However, in Austin we cautioned that court congestion "is not a blank check for poor judicial administration," as "[t]he protections afforded a defendant under Criminal Rule 4 are not to be trampled upon and trial courts must remain vigilant in its enforcement." 997 N.E.2d at 1043–44. And because the protections of Rule 4(C) are not co-extensive with the protections guaranteed by the Sixth Amendment and Article 1, Section 12, the trial court's technical compliance with Rule 4(C) does not end our inquiry.[6] We now turn to whether Logan was denied his right to a speedy trial under the U.S. and Indiana Constitutions.

## II.        Right to Speedy Trial under United States and Indiana Constitutions

The Sixth Amendment to the U.S. Constitution provides, in relevant part, that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial," U.S. CONST. amend. VI. Article 1, Section 12 of the Indiana Constitution states, in applicable part, that "[j]ustice shall be administered freely, and without purchase; completely, and without denial; speedily, and without delay." IND. CONST. art. 1, § 12. Logan argues that, under both constitutions, the 1,291-day delay from the State's filing of the charge against him to the start of his jury trial violated his right to a speedy trial and thus entitles him to dismissal of the class C felony child molestation charge.

---

[6] Under both constitutions, the right to a speedy trial ensures a defendant broader protection than Ind. Crim. Rule 4. For example, suppose the trial court only designated twelve trial dates per year but had fifty men and women awaiting trial in its court. A later-charged defendant may then experience indefinitely numerous court congestion continuances that, technically, comply with Rules 4(B) and 4(C). But such an arrangement does not further or ensure the defendant's constitutionally protected right to a speedy trial—and exposes the limits to Rule 4 and the resulting need for a separate constitutional analysis.

11

To resolve claimed speedy trial violations under our state constitution, we apply the federal speedy trial analysis of <u>Barker v. Wingo</u>, 407 U.S. 514 (1972). <u>Crawford v. State</u>, 669 N.E.2d 141, 145 (Ind. 1996) (citing <u>Fortson v. State</u>, 269 Ind. 161, 379 N.E.2d 147 (1978)). In <u>Barker</u>, the United States Supreme Court identified four factors to balance when considering whether the defendant has been deprived of his or her right to a speedy trial: (1) length of the delay; (2) reason(s) for the delay; (3) defendant's assertion of his or her right; and (4) prejudice to the defendant. 407 U.S. at 530. The Court characterized this approach as "a balancing test, in which the conduct of both the prosecution and the defendant are weighed." <u>Id.</u> Because Logan's three-and-one-half-year delay between the filing of a class C felony charge against him and his trial calls into question his constitutional right to a speedy trial, we apply the <u>Barker</u> approach and take each consideration in turn.

**<u>Length of Delay</u>**

"[T]o some extent a triggering mechanism," the appropriateness of the length of delay between the State's filing of charges against the defendant and the beginning of the defendant's trial is "necessarily dependent upon the peculiar circumstances of the case." <u>Id.</u> at 530–31. For example, "the delay that can be tolerated for an ordinary street crime is considerably less than for a serious, complex conspiracy charge." <u>Id.</u> at 531.

Here, it is undisputed that the length of Logan's delay for a class C felony was substantial. The State filed an Information charging Logan with class C felony child molestation on July 31, 2009, but his jury trial would not begin until February 11, 2013—a delay of 1,291 days, or precisely three years, six months, and eleven days. For 1,029 of these days (2.8 years), amounting to almost eighty percent of the time, Logan was incarcerated. Only 154 days, or

12

approximately twelve percent of the total delay, are attributable to Logan's five requested pre-trial conference continuances.[7]

Moreover, Logan faced only one class C felony charge carrying a two-year statutory minimum, eight-year statutory maximum, and four-year advisory sentence. As he served the good-time equivalent of five years and almost eight months (2,058 days) before the trial court ordered his release from jail pursuant to our order, Logan very nearly served the length of his six-year sentence *before his trial even began*.[8]

Previously, though we declined to reverse a defendant's conviction, we declared an approximately two-and-one-half-year delay between the filing of charges and the beginning of trial "unusually long" in a case where the defendant was imprisoned in another state and had to be *extradited* to Indiana to stand trial. Ballentine v. State, 480 N.E.2d 957, 957–59 (Ind. 1985). Cf. Sweeney, 704 N.E.2d at 102–03 (39-month delay from charges to trial not unreasonable where delays attributable in part to defendant's filing several motions to continue trial). Here, Logan's delay from charging to trial lasted three-and-one-half times the length Rule 4(C) contemplates, and was considerable, unfortunate, and inexcusable. And at three-and-one-half years, his wait to be tried on a class C felony greatly exceeded what we would consider reasonable. Accordingly, this factor weighs heavily in his favor.

---

[7] The Court of Appeals mistakenly charged Logan with 222 extra days of delay, an error which may have impacted its overall weighing of the Barker factors. See Logan, No. 20A05-1304-CR-192, Slip. op. at *7.

[8] Ind. Code § 35-50-6-3(a) (2008) (now codified as Ind. Code § 35-50-6-3(a-b) (effective July 1, 2014)).

**Reasons for Delay**

Next, we evaluate the reasons behind Logan's 1,291-day wait to be tried. In Barker, the Court determined that

> different weights should be assigned to different reasons. A deliberate attempt to delay the trial in order to hamper the defense should be weighted heavily against the government. A more neutral reason such as negligence or overcrowded courts should be weighted less heavily but nevertheless should be considered since *the ultimate responsibility for such circumstances must rest with the government* rather than with the defendant. Finally, a valid reason, such as a missing witness, should serve to justify appropriate delay.

407 U.S. at 531 (emphasis added).

Initially, Logan was responsible for 154 days of delay, as he requested five continuances of his pre-trial conference. But once his pre-trial conference was held on March 25, 2010, and his jury trial set for November 8, 2010, his trial was continued *seven* times due to court congestion—the first three attributable to the State, and the remainder to the trial court—for a total of 826 calendar days between November 8, 2010, and his eventual trial date of February 11, 2013.

At his July 14, 2011 pre-trial conference, Logan expressed that discovery had been completed and that he was prepared to go to trial. Despite his (and the State's) readiness, due to court congestion it would be another nineteen months before Logan's trial would begin. Cf. Vermillion v. State, 719 N.E.2d 1201, 1206 (Ind. 1999) (reasons for 21-month delay between charging and trial "attributable largely to the defendant," who elected to proceed pro se and requested multiple continuances). Although a congested court calendar weighs less heavily against the State, it still must be viewed as the responsibility of the government and an impediment to a defendant's constitutional right to a speedy trial. As such, this factor also weighs in Logan's favor.

14

**Logan's Assertion of Right to Speedy Trial**

Whether Logan asserted his constitutional right to a speedy trial "is entitled to strong evidentiary weight in determining whether [he] is being deprived of the right." Barker, 407 U.S. at 531–32. This inquiry is closely related to the other Barker factors, as "[t]he strength of his efforts will be affected by the length of the delay, to some extent by the reason for the delay, and most particularly by the personal prejudice . . . that he experiences. The more serious the deprivation, the more likely a defendant is to complain." Id. at 531.

And complain he did. Once the trial court began to continue his trial dates, Logan filed a motion or orally requested to be discharged from prosecution on seven different occasions, in addition to filing a partially successful writ of mandamus and prohibition. In fact, each of Logan's requests followed the trial court's granting a continuance of his trial date. To compare, in Sweeney we found the eponymous defendant's attempts to assert his right to a speedy trial insufficient, for although Sweeney requested a speedy trial on several occasions, he was often "the protagonist of the delays" by filing numerous motions to continue his trial. 704 N.E.2d at 102. Because Logan persistently and emphatically asserted his right to a speedy trial, and did not otherwise hinder its progress, this factor weighs heavily in his favor.

**Prejudice to Logan**

Finally, we examine any prejudice to Logan that resulted from his 1,291-day delay between charging and trial.

> Prejudice, of course, should be assessed in the light of the interests of defendants which the speedy trial right was designed to protect. This Court has identified three such interests: (i) to prevent oppressive pretrial incarceration; (ii) to minimize anxiety and concern of the accused; and (iii) to limit the possibility that the

15

> defense will be impaired. Of these, the most serious is the last, because the inability of a defendant adequately to prepare his case skews the fairness of the entire system.

Barker, 407 U.S. at 532.

Logan insists that "the delay in prosecution resulted in oppressive pretrial incarceration and undue anxiety, and possibly impaired [his] defense" in unmeasurable ways. (Appellant's Br. at 17.) In response, the State claims that "Logan fails to identify any specific prejudice to his defense. For example, he does not cite any loss of evidence . . . or any other impairment to his defense. Thus, he has failed to demonstrate prejudice to his defense, and his claim of prejudice must fail." (Appellee's Br. at 14.) Moreover, according to the State, we cannot presume Logan suffered prejudice from the delay, as courts "generally have found presumed prejudice only in cases in which the post-indictment delay lasted at least five years." State v. Ollivier, 178 Wash.2d. 813, 842–43 (2013).

Though Logan cannot point to particular prejudice resulting from his prolonged delay for trial,[9] such as a crucial witness of his becoming unavailable during this time, Barker does have us consider "personal prejudice, which is not always readily identifiable, that [the defendant] experiences" as a result of his or her wait. Barker, 407 U.S. at 531. See also Doggett v. United States, 505 U.S. 647, 655 (1992) ("affirmative proof of particularized prejudice is not essential to every speedy trial claim"). Moreover, in general "[t]he time spent in jail awaiting trial has a detrimental impact on the individual. It often means loss of a job; it disrupts family life; and it enforces idleness." Barker, 407 U.S. at 532. And "even if an accused is not incarcerated prior to

---

[9] This is not fatal to his argument: "[i]ndeed, the Supreme Court has noted that 'affirmative proof of particularized prejudice is not essential to every speedy trial claim.'" Fisher v. State, 933 N.E.2d 526, 533 (Ind. Ct. App. 2010) (citing Doggett v. United States, 505 U.S. 647, 655 (1992)).

16

trial, he is still disadvantaged by restraints on his liberty and by living under a cloud of anxiety, suspicion, and often hostility." Id. at 533.

Thus, by virtue of his 1,291-day delay between charging and trial, 826 of which were a result of seven court congestion continuances and 1,029 of which he spent incarcerated, Logan experienced personal prejudice attributable to his protracted wait to be tried. Yet because Logan is unable to point to any *specific* prejudice beyond inherent "oppressive pretrial incarceration" resulting from this delay, this factor weighs only moderately in his favor.

## Unduly Long Delay Violated Logan's Right to a Speedy Trial

All four Barker factors weigh in Logan's favor and compel the conclusion that the delay of three years, six months, and eleven days between the filing of the charge against him and the beginning of his trial for class C felony child molestation violated his right to a speedy trial under the U.S. and the Indiana Constitutions. Specifically guaranteed in both constitutions, the right to a speedy trial is a fundamental right of the accused that trial courts must be diligent in protecting and defendants zealous in asserting. Id. at 533. When, on balance, the length of the defendant's wait for trial, the reasons behind the delay, the defendant's assertion of his or her right, and the presence of prejudice to the defendant as a result of the delay show that the trial court has not assiduously safeguarded the defendant's right to a speedy trial, then the defendant must not face the charges filed against him or her.

To prevent the potential for any subsequent violation of a defendant's constitutional right to a speedy trial due to protracted court congestion, we encourage trial courts to consider setting the defendant's trial date at his or her first initial hearing and to remain diligent in monitoring the age of these cases. We acknowledge that the State has a vested interest, and indeed an obligation, in monitoring criminal cases to ensure that defendants are brought to justice in a timely manner.

In this particular case, the record reflects that jury trials were scheduled on an average of twenty to twenty-four dates each year. Considering the trial court's limited availability and Logan's repeated assertion of his right, we urge trial judges facing similar circumstances to consider, when they deem it necessary, going outside their standard practice in establishing jury trial dates to ensure that a defendant's right to a speedy trial is guaranteed. For example, a trial judge could move a previously set civil trial in favor of a criminal defendant, start a criminal trial on a different day of the week (say, a Wednesday instead of the typical Monday), or delegate certain tasks to a magistrate in order to free up resources to try the defendant.

We are not suggesting, nor implying, that our trial judges must do the impossible. We are simply reiterating that they are the gatekeepers of justice. Our trial courts must continue to be diligent, adaptable, and creative in an effort to secure a criminal defendant's fundamental right to a speedy trial.

## Conclusion

We therefore order Logan released from incarceration, vacate his conviction for class C felony child molestation, and remand to the trial court for proceedings consistent with this opinion.

Rush, C.J., Dickson, Rucker, and Massa, J.J., concur.