

I N  T H E

# Indiana Supreme Court

Supreme Court Case No. 20S-CR-64

## Stanley V. Watson
*Appellant (Defendant)*



FILED

Oct 21 2020, 11:15 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

–v–

## State of Indiana
*Appellee (Plaintiff)*

Argued: May 27, 2020 | Decided: October 21, 2020

Appeal from the Ripley Circuit Court
No. 69C01-0010-CF-52
The Honorable James D. Humphrey, Special Judge

On Petition to Transfer from the Indiana Court of Appeals
No. 19A-CR-49

**Opinion by Chief Justice Rush**

Justices David, Massa, and Goff concur.
Justice Slaughter concurs, except as to Part II.C.

**Rush, Chief Justice.**

The right to a speedy trial—one of our oldest guarantees—imposes an affirmative duty on the government to ensure that criminal defendants receive the swift administration of justice. This fundamental right is safeguarded by the Sixth Amendment to the United States Constitution; Article 1, Section 12 of our Indiana Constitution; and Indiana Criminal Rule 4.

Here, Stanley Watson was serving an eighty-year sentence—including fifty years for a single drug conviction—when the trial court vacated his thirty-year habitual-offender enhancement. The State was granted permission to retry the habitual-offender allegation, but it would be over six years before that happened. During those years of waiting, Watson repeatedly communicated his desire to be tried; and he eventually filed a motion to dismiss, asserting violations of Criminal Rule 4(C) and his constitutional right to a speedy trial. The trial court denied the motion, however, and Watson was found to be a habitual offender.

We reverse. Although Criminal Rule 4(C) does not apply to a habitual-offender retrial, Watson's constitutional right to a speedy trial was violated by the extraordinary six-plus-year delay. We thus remand with instructions to vacate Watson's habitual-offender enhancement.

## Facts and Procedural History

In 2001, a jury convicted Stanley Watson of felony dealing in cocaine and found he was a habitual offender. The trial court subsequently sentenced Watson to eighty years in prison—fifty years for the drug conviction and thirty years for the habitual-offender enhancement.

Two years later, Watson challenged the enhancement in a petition for post-conviction relief. Eventually—in April 2012—the State conceded that two of the convictions supporting the habitual-offender finding were insufficient. So, the court granted relief and vacated the thirty-year enhancement. But then, in July of that year, the State was granted permission to retry Watson on the habitual-offender allegation.

It would be 2,325 days—nearly six and a half years—before he was retried.[1] The table below shows the intervening events that occurred while Watson, from his prison cell, awaited resolution of the outstanding charge.

| 2013 | |
|---|---|
| January 14 | Watson moves to continue the January 29 trial—reset for September. |
| September 16 | Watson moves to continue the trial—reset for June 2014. |
| November 14 | The court, on its own motion, continues the trial to July 2014. |
| **2014** | |
| June 16 | Watson moves to continue the trial—reset for February 2015. |
| **2015** | |
| January 21 | The judge recuses himself, and Watson's February trial date is removed from the calendar. |
| January 28 | A special judge is appointed. |
| August 12 | The judge accepts the appointment. |
| September 29 | Watson, in a letter to the court, asks for an update and requests a new trial date. |
| October 20 | The court sets the trial for April 2016. |
| December 9 | Watson, in a letter to the court, writes, "I want to get this trial over." |

---

[1] The trial court calculated a delay of 2,431 days. That number, however, is incorrect. The court began counting the days from April 2, 2012—when the habitual-offender enhancement was vacated. But the right to a speedy trial attaches when a criminal prosecution has begun. *United States v. MacDonald*, 456 U.S. 1, 7 (1982). That occurred on July 16, 2012, when the court granted the State's motion to retry Watson on the enhancement and set a trial date. While we acknowledge that neither party disputes the court's numbers, the nature of a speedy trial claim requires precision in computing the delay. We accordingly correct mistakes in the trial court's calculations throughout this opinion.

| 2016 | |
|---|---|
| March 9 | The State, over Watson's objection, moves to continue the trial—reset for October. |
| May 10 | The court, on its own motion, moves the trial date up from October 18 to October 4. |
| October 3 | The State, over Watson's objection, moves to continue the trial—reset for March 2017. |
| **2017** | |
| March 21 | Watson's trial date comes and goes—nothing happens. |
| April 11 | Watson, in a letter to the court, expresses confusion over why his March trial didn't take place. He assumes "it was continued again" and asks for the new trial date. |
| October 5 | The State files a motion to set a trial date, and the special judge recuses himself. |
| October 11–12 | A second special judge is appointed, but that judge also recuses himself. A third special judge is appointed. |
| November 20 | The court sets trial for May 2018. |
| **2018** | |
| April 13 | Watson's attorney withdraws representation. The court appoints new counsel. |
| April 30 | Watson's new attorney moves to continue the trial—reset for November. |
| November 15 | Watson files a motion to dismiss, alleging a violation of Indiana Criminal Rule 4(C) and his constitutional right to a speedy trial. |
| November 27 | Watson's trial takes place, and the jury finds that he is a habitual offender. |

The day after Watson's trial, the court denied his motion to dismiss. It found that Indiana Criminal Rule 4(C) "does not apply to retrials after vacation or reversal of a conviction" and that Watson's constitutional right to a speedy trial was not violated. Watson appealed, arguing that the six-

plus-year delay violated Rule 4(C) and his constitutional rights to both a speedy trial and due process.

In a split decision, the Court of Appeals reversed and vacated Watson's habitual-offender enhancement, concluding that he should have been discharged under Criminal Rule 4(C). *Watson v. State*, 135 N.E.3d 982, 987–88 (Ind. Ct. App. 2019). Judge Kirsch dissented, believing that relief under Rule 4(C) did not apply to Watson's claim. *Id.* at 988 (Kirsch, J., dissenting).

We granted transfer, vacating the Court of Appeals opinion. Ind. Appellate Rule 58(A).

## Standard of Review

Watson contends that the trial court improperly denied his motion to dismiss. In evaluating Watson's speedy trial claims, we review factual findings for clear error and questions of law de novo. *Austin v. State*, 997 N.E.2d 1027, 1040 & n.10 (Ind. 2013); *State v. Azania*, 865 N.E.2d 994, 1002 (Ind. 2007), *clarified on reh'g on other grounds*, 875 N.E.2d 701.

## Discussion and Decision

The right to a speedy trial is one of this country's most basic, fundamental guarantees—one much older than the nation itself. *Klopfer v. North Carolina*, 386 U.S. 213, 223–24 (1967) (citing Magna Carta, c. 29 (1225), *reprinted in* Edward Coke, *The Second Part of the Institutes of the Laws of England* 45 (Brooke, 5th ed., 1797)). It protects against "prolonged detention without trial" as well as unreasonable "delay in trial." *Id.* at 224.

To safeguard these protections, the State and the courts—together, the government—have an obligation to ensure the timely prosecution of criminal defendants. *See, e.g.*, *Logan v. State*, 16 N.E.3d 953, 964–65 (Ind. 2014); *Fisher v. State*, 933 N.E.2d 526, 530 (Ind. Ct. App. 2010). At times, however, that obligation may remain unfulfilled. When that happens, a defendant can draw on three sources to assert a violation of this fundamental right.

The first two are found in the Sixth Amendment to the United States Constitution and Article 1, Section 12 of the Indiana Constitution. When evaluating whether a defendant's constitutional speedy trial right has been infringed, we use the balancing test announced by the Supreme Court of the United States in *Barker v. Wingo*, 407 U.S. 514 (1972). *See, e.g.*, *Logan*, 16 N.E.3d at 961. The test assesses both the government's and the defendant's conduct and takes into consideration (1) the length of the delay, (2) the reason for the delay, (3) the defendant's assertion of the speedy trial right, and (4) any resulting prejudice. *Barker*, 407 U.S. at 530. Though this analysis is grounded in the Sixth Amendment, we have traditionally also applied it to claims brought under Article 1, Section 12. *See, e.g., Crawford v. State*, 669 N.E.2d 141, 145 (Ind. 1996) (citing *Fortson v. State*, 269 Ind. 161, 169, 379 N.E.2d 147, 152 (1978)).[2]

A third source of protection is Indiana Criminal Rule 4, which gives defendants another path to ensure the speedy administration of justice. *See Curtis v. State*, 948 N.E.2d 1143, 1147 n.3 (Ind. 2011). This rule

---

[2] Since *Fortson*—the first time this Court confronted a speedy trial claim brought under both constitutions—Indiana courts have used the federal *Barker* factors when evaluating a defendant's state constitutional claim. *See, e.g., Sweeney v. State*, 704 N.E.2d 86, 102 (Ind. 1998). But these factors—particularly, the defendant's assertion of the speedy trial right—may not account for the difference in language between the Sixth Amendment and Article 1, Section 12. The former states a **right**, "[T]he accused shall enjoy the right to a speedy and public trial," U.S. Const. amend. VI, but the latter gives a **directive**, "Justice shall be administered . . . speedily, and without delay," Ind. Const. art. 1, § 12. So, while the Sixth Amendment invites analysis into whether and how defendants assert their right to a speedy trial, Article 1, Section 12 seemingly does not. In fact, prior to *Fortson*, this Court recognized that Article 1, Section 12 "casts no burden upon the defendant, but does cast an imperative duty upon the state and its officers, the trial courts and prosecuting attorneys, to see that a defendant" receives a speedy trial. *Zehrlaut v. State*, 230 Ind. 175, 183–84, 102 N.E.2d 203, 207 (1951). Therefore, under our state constitution, a defendant's speedy trial "demand is effectively made for him." *Id.* at 184, 102 N.E.3d. at 207; *see also Barker*, 407 U.S. at 524 & n.21 (citing *Zehrlaut* in recognizing Indiana as one of eight states to reject a demand rule). Yet, in *Fortson*, there was no reference to *Zehrlaut* or to the disparity in language between the two provisions. *See Fortson*, 269 Ind. at 169, 379 N.E.2d at 152. And thus, for a speedy trial claim brought under Article 1, Section 12, an analysis distinct from *Barker* may be more suitable. *Cf. State v. Harberts*, 11 P.3d 641, 648, 650–51 (Or. 2000) (rejecting the *Barker* factors for analyzing speedy trial claims brought under the Oregon Constitution, which was modeled after Indiana's). But because neither party asks us to undertake this separate analysis, we use only the federal test.

establishes time limits for prosecution and provides for discharge of a defendant when those limits are exceeded. *Bridwell v. State*, 659 N.E.2d 552, 553 (Ind. 1995). More specifically, Criminal Rule 4(C)—the relevant subsection here—places an affirmative duty on the State to bring a defendant to trial within one year from the later of two dates: (1) the filing of charges or (2) the arrest. Ind. Crim. R. 4(C). Importantly, Criminal Rule 4 does not cover every aspect of its broader constitutional counterparts. *Cundiff v. State*, 967 N.E.2d 1026, 1027 n.2 (Ind. 2012). And thus, our review of a Rule 4 challenge is separate from a claimed constitutional violation. *Logan*, 16 N.E.3d at 958.

Here, Watson waited nearly six and a half years before he was retried on the State's habitual-offender allegation. He contends that this delay violates his right to a speedy trial under Criminal Rule 4(C) and the state and federal constitutions. The State responds that Watson is not entitled to relief, arguing that Rule 4(C) does not apply to retrials and that the delay was not unconstitutional.

Both parties are partially correct. While Criminal Rule 4(C) does not apply to habitual-offender retrials, the six-plus-year delay violated Watson's constitutional right to a speedy trial.[3]

## I. Criminal Rule 4(C) does not apply to the retrial of a habitual-offender allegation.

Criminal Rule 4(C) requires the State to bring a defendant to trial within one year, excluding delays caused by the defendant or court congestion. The one-year clock is triggered by the later of either the date charges are filed or the date of the defendant's arrest. Because these occur at the beginning stages of a criminal prosecution, we have previously held that Rule 4(C)—by its language—does not anticipate mistrials or retrials. *See James v. State*, 716 N.E.2d 935, 939 (Ind. 1999); *State ex rel. Brumfield v.*

---

[3] Because we find that the delay violated Watson's constitutional right to a speedy trial, we do not address his claim that the delay violated his constitutional right to due process.

*Perry Cir. Ct.*, 426 N.E.2d 692, 695 (Ind. 1981). Watson acknowledges this general principle, but he argues that, in *Poore v. State*, 685 N.E.2d 36 (Ind. 1997), we held that Criminal Rule 4 applies to habitual-offender retrials. Watson reads that decision too broadly.

In *Poore*, we found that Criminal Rule 4(B)—not Criminal Rule 4(C)—applies to habitual-offender proceedings. 685 N.E.2d at 38–39. And, in reaching that conclusion, we highlighted a key difference between the two subsections: they are triggered in different ways. *Id.* at 38 n.2.

Criminal Rule 4(B) allows an incarcerated defendant to "move for an early trial" and then be "discharged if not brought to trial within seventy (70) days." Crim. R. 4(B)(1).[4] So, Rule 4(B) can be triggered by a defendant at **any** stage of a criminal prosecution: the 70-day clock runs from the date the incarcerated defendant files a motion. But Rule 4(C) is triggered automatically at the **beginning** of a criminal prosecution: the one-year clock runs from the later of charges being filed or arrest. Because of these differences, we concluded that the "decisions holding Rule 4(C) inapplicable to retrials are not on point" and that a habitual-offender proceeding is, in fact, a "trial" for Rule 4(B) purposes. *Poore*, 685 N.E.2d at 38 n.2, 39.

In sum, *Poore* was confined to Criminal Rule 4(B); and we reinforce here that Criminal Rule 4(C)'s triggering mechanism forecloses its application to the retrial of a habitual-offender allegation, *see Brumfield*, 426 N.E.2d at 695. Thus, Watson is not entitled to relief under Rule 4(C). But this does not end our inquiry—we now turn to whether he was denied his constitutional right to a speedy trial.

---

[4] Watson did not file a Criminal Rule 4(B) motion.

## II. The six-plus-year delay violated Watson's constitutional right to a speedy trial.

Pursuant to a defendant's constitutional right to a speedy trial—secured by the Sixth Amendment to the United States Constitution and Article 1, Section 12 of the Indiana Constitution—both the State and courts have an obligation to ensure the speedy administration of justice. This constitutional guarantee primarily protects three interests of criminal defendants: (1) preventing oppressive pretrial incarceration; (2) minimizing anxiety and concern; and (3) limiting the possibility that the defense will be impaired. *Barker*, 407 U.S. at 532. To safeguard those interests, we apply the *Barker* balancing test. *Sweeney v. State*, 704 N.E.2d 86, 102–03 (Ind. 1998).

The *Barker* test weighs the conduct of the government against the conduct of the defendant. 407 U.S. at 530. This requires an examination of four nonexclusive factors: (1) was the delay uncommonly long; (2) who is more responsible for the delay; (3) did the defendant assert their right to a speedy trial; and (4) did the defendant suffer prejudice because of the delay. *Doggett v. United States*, 505 U.S. 647, 651 (1992) (citing *Barker*, 407 U.S. at 530). No individual factor is "a necessary or sufficient condition" for a speedy trial violation; instead, each inquiry is related and must be considered together in the context of a particular case. *Barker*, 407 U.S. at 533. This analysis provides a framework by which courts can preserve the integrity of this constitutional right—one that has been described as "slippery" and "amorphous." *See id.* at 522.

With this framework in hand, we will now determine whether Watson was denied his constitutional right to a speedy trial.

### A. The delay is presumptively prejudicial and far exceeds the triggering threshold.

The first *Barker* factor, the length of delay, involves a dual inquiry and acts as the gateway to a full speedy trial analysis. 407 U.S. at 530–31. If the interval between accusation and trial is "ordinary," further inquiry into the other factors is unnecessary. *Doggett*, 505 U.S. at 651–52, 652 n.1;

*Barker*, 407 U.S. at 530–31. But if the defendant shows that the interval is "presumptively prejudicial," we then consider the extent to which the delay exceeds that triggering threshold. *Doggett*, 505 U.S. at 652. Delays approaching one year generally satisfy the presumptively prejudicial threshold. *See id.* at 652 n.1; *Vermillion v. State*, 719 N.E.2d 1201, 1206 (Ind. 1999).

Here, Watson waited 2,325 days—nearly six and a half years—for a trial to determine whether he was a habitual offender. The trial court concluded that this delay "is considerable and sufficient to trigger a *Barker* analysis." We agree.

The delay here is over six times the length of the presumptively prejudicial threshold: it exceeds the five-plus years the *Barker* Court called "extraordinary" and nearly doubles the three and a half years we characterized in *Logan* as "substantial." *Barker*, 407 U.S. at 533; *Logan*, 16 N.E.3d at 962. Further, *Barker* recognized that a tolerable amount of delay is dependent on the complexity of a particular case. 407 U.S. at 530–31. But a habitual-offender allegation generally doesn't involve an intricate prosecution—it requires the State to prove only that the defendant "has accumulated two (2) prior unrelated felony convictions." Ind. Code § 35-50-2-8(a) (2012). Thus, a delay of over six years in this context is extraordinarily long.

In short, the exceptional length of delay here both triggers the *Barker* analysis and weighs in Watson's favor.

## B. The government is responsible for a majority of the delay.

The second *Barker* factor, the reasons for delay, is the "flag all litigants seek to capture." *United States v. Loud Hawk*, 474 U.S. 302, 315 (1986) (citing *Barker*, 407 U.S. at 531). It requires an assessment of who is more responsible for the delay: the government or the defendant. *Doggett*, 505 U.S. at 651.

When considering delays attributable to the government, we assess the reasons for those delays and assign them different weights. *Barker*, 407

U.S. at 531. Reasons for delay generally fall into three categories: (1) justifiable, like a missing witness; (2) neutral, like negligence or court congestion; or (3) bad faith, like a purposeful attempt to hinder the defense. *See id*. Only those reasons falling in the latter two categories weigh against the government, with one grounded in bad faith weighing most heavily. *Id.* On the other side of the scale, any delay caused by the defense falls on the defendant. *Vermont v. Brillon*, 556 U.S. 81, 90 (2009).

Here, the trial court concluded that the government was responsible for a majority of the six-plus-year delay and that the underlying reasons were all neutral. We agree with both conclusions[5] and explain why in detail below.

In July 2012, the court granted the State's motion to retry Watson. Then, in January 2013, Watson was granted the first of three continuances that ultimately resulted in his retrial being postponed until February 2015. A month before that date, however, it was removed from the court's calendar because a special judge was appointed. But, for reasons that aren't clear from the record, the special judge didn't accept the appointment for nearly eight months.

After the special judge eventually set trial for April 2016, the State— over Watson's objections—was granted two continuances. It's again unclear from the record why the State would need to twice continue the trial at this stage. Regardless, after the second continuance, trial was set for March 2017. That date inexplicably came and went, however, without a proceeding. The State then waited nearly seven months before asking the court to set a new date. Two more special judge appointments followed; and in November 2017, the court set trial for May 2018. Finally,

---

[5] The court made two legal errors when analyzing this factor. First, the trial court found that court-caused delay weighs against the State but "less so than delays directly caused by the State." Though the court cited *Barker* to support this conclusion, *Barker* explicitly does not differentiate between neutral delays caused by the prosecution and those caused by the court. 407 U.S. at 531. Indeed, the State and court share the duty to ensure a defendant receives a speedy trial. *Id.* (observing that "the ultimate responsibility for such circumstances must rest with the government"). Second, the trial court incorrectly found that the delay caused by Watson's second attorney did not weigh against Watson. *See Brillon*, 556 U.S. at 90.

based on actions attributable to Watson, trial was further delayed until it was held that November.

Of these 2,325 days of delay, Watson is responsible for 965 days—737 days in the beginning of the prosecution and 228 days at the end. But the State and court are responsible for 1,360 days. In other words, actions by the government, in the middle of Watson's prosecution, delayed his trial by nearly four years. And though that delay is all based on neutral reasons, it is still unacceptable for constitutional speedy trial purposes. *See Doggett*, 505 U.S. at 657.

In short, the government is responsible for a majority of the delay. Watson has thus captured the proverbial flag as this factor weighs in his favor.

## C. Watson asserted his right to a speedy trial.

The third *Barker* factor requires an examination of whether and how a defendant asserted the speedy trial right. 407 U.S. at 531. While "a defendant has some responsibility to assert a speedy trial claim," we do not look solely for a "*pro forma* objection." *Id.* at 529. We also consider "the frequency and force" of other, less formal assertions of the right. *Id.* The ultimate inquiry is a fluid one: we determine whether the State and court were put on notice that a defendant has asserted their speedy trial right, while remaining mindful of any conduct by the defendant to the contrary. *Loud Hawk*, 474 U.S. at 314; *Strunk v. United States*, 412 U.S. 434, 436 (1973).

Here, the trial court made three observations when concluding that this factor weighs against Watson: (1) Watson did not formally object on speedy trial grounds until he filed a motion to dismiss shortly before the eventual trial; (2) though Watson wrote to the court—three years earlier—that he wanted "to get this trial over," his objections were ineffective as Watson could speak only through represented counsel; and (3) it was the State, not Watson, who requested a new trial date after the first special judge retired. As we explain below, these observations are misguided; Watson sufficiently asserted his speedy trial right.

It's true that Watson did not formally object on speedy trial grounds until his motion to dismiss. But prior to that, Watson wrote not one, but four, letters to the trial court that sufficiently put it and the State on notice that he wanted the pending allegation resolved. In September 2015, Watson informed the court that he "wasn't picked up for trial" and asked about his "new court date." A few months later, Watson wrote to correct a scrivener's error on the court's order setting a new date, explaining, "I don't want there to be any mix-up as I want to get this trial over." Then, in April 2017, less than a month after his scheduled trial date inexplicably came and went with no proceeding, Watson wrote that he assumed his trial "was continued again as I wasn't picked up" and asked for the new date. Finally, about a year later, Watson again implored the court to "please tell me my new court date." What's more, between the second and third letters, the State was granted two continuances over Watson's objection. Thus, this is not a case in which "the defendant knowingly fails to object" to further delay. *Barker*, 407 U.S. at 529. Rather, Watson expressed his desire to be tried and, during that time, took no action to contradict that desire.

We acknowledge that Watson was represented by counsel when he wrote each letter, but that does not mean his correspondence should be ignored when evaluating whether Watson asserted his personal right to a speedy trial. *See United States v. Tigano*, 880 F.3d 602, 618 (2d Cir. 2018) (recognizing that, in the context of a constitutional speedy trial claim, a defendant's assertion of their own right—regardless of actions by counsel—is the relevant consideration). As *Barker* explained, this fundamental right "is unique in its uncertainty as to when and under what circumstances it must be asserted." 407 U.S. at 529. And the circumstances here reveal that Watson wrote each letter during a time when his first attorney was unresponsive to his inquiries and not filing documents with the court to expedite the process. *See id.*; *cf. Underwood v. State*, 722 N.E.2d 828, 832 (Ind. 2000). And while it's true that the trial court was not required to respond to Watson's correspondence, what matters is whether the letters put the government on notice that Watson wanted to be tried. And given their "frequency and force," his letters provided sufficient notice. *Barker*, 407 U.S. at 529.

Finally, because it was the State's obligation to request a new trial date after the first special judge retired, we cannot fault Watson for not making that request.[6] *See id.* ("[T]he primary burden [is] on the courts and the prosecutors to assure that cases are brought to trial.").

In short, Watson appropriately asserted his right to a speedy trial and did not act in a manner contrary to that assertion. Thus, this factor weighs in his favor.

### D. Watson experienced prejudice as a result of the excessive delay.

The final *Barker* factor considers the prejudice the defendant experienced from the delay. *Id.* at 532–33. We assess prejudice in light of the three interests the speedy trial guarantee was designed to protect: (1) preventing oppressive pretrial incarceration; (2) minimizing the anxiety and concern of the accused; and (3) limiting the possibility that the defense will be impaired. *Id.* at 532.

Here, the trial court considered these interests and found that the only prejudice to Watson was "anxiety from having to await resolution of the habitual offender allegation." The court then concluded that this factor "weighs heavily" against Watson. We disagree.

The unique facts of this case reveal particularized and substantial anxiety arising out of the excessive delay. *See Allen v. State*, 686 N.E.2d 760, 784 (Ind. 1997). We recognize that anxiety is normal for anyone facing a pending charge, but the angst Watson experienced from the unnecessary delay is of a considerable magnitude. For over six years—nearly four of which are attributable to the government—Watson was left to wonder whether he would be released at age seventy-six or die in prison. *Cf. United States v. Black*, 918 F.3d 243, 265 (2d Cir. 2019) (finding the magnitude and concern incurred by defendants awaiting the government's death-penalty decision was "great" and "weigh[ed]

---

[6] Notably, the State waited at least six months after the retirement to make the request.

heavily" in the court's determination that the delay was prejudicial). We find that this unusual level of anxiety exceeds that which is inevitable in every criminal case. And while Watson's particularized angst alone may not support relief under *Barker*, it is still a sufficient showing of prejudice to tip this factor in his favor.

In finding that Watson has made a showing of prejudice based on particularized anxiety, we are mindful of the other interests at play: preventing oppressive pretrial incarceration and limiting potential impairment of the defense. To the first, we acknowledge that, under normal circumstances, the fact that a defendant is already incarcerated will mitigate any prejudice attributable to anxiety. But there are times when "an outstanding untried charge . . . can have fully as depressive an effect upon a prisoner as upon a person who is at large." *Smith v. Hooey*, 393 U.S. 374, 379 (1969). And the outstanding allegation here, which would determine Watson's ultimate fate, undoubtedly had a significant depressive effect. To the final interest, we are cognizant that Watson has not claimed any prejudice to his defense. But it is well settled that such a showing is not required. *See, e.g.*, *United States v. MacDonald*, 456 U.S. 1, 7–8 (1982); *Moore v. Arizona*, 414 U.S. 25, 26–27 (1973).

In short, under these rare circumstances, we find that Watson has made a particularized and substantial showing of anxiety arising out of the government's excessive delay. Thus, Watson has endured prejudice, and this factor weighs in his favor.

### E. Watson's constitutional right to a speedy trial has been violated.

All four *Barker* factors weigh in Watson's favor. First, six-plus years of delay to try Watson on a habitual-offender allegation is uncommonly long. Second, the government is responsible for a majority of that delay. Third, Watson appropriately asserted his right to a speedy trial. And finally, Watson has shown prejudice resulting from the extraordinary delay. And so, we find that Watson was denied his constitutional right to a speedy trial.

# Conclusion

Watson is not entitled to discharge under Criminal Rule 4(C) because that rule does not apply to the retrial of a habitual-offender allegation. But an analysis of the relevant factors reveals that Watson's constitutional right to a speedy trial was violated, and thus, he is entitled to relief. We reverse the trial court and remand with instructions to vacate Watson's habitual-offender enhancement.

David, Massa, and Goff, JJ., concur.
Slaughter, J., concurs, except as to Part II.C.

ATTORNEY FOR APPELLANT

Cara S. Wieneke
Wieneke Law Office, LLC
Brooklyn, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Stephen R. Creason
Chief Counsel

Samuel J. Dayton
Deputy Attorney General
Indianapolis, Indiana