## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Jun 22 2016, 8:51 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

| APPELLANT PRO SE | ATTORNEYS FOR APPELLEE |
|---|---|
| Tracy Hertel | Gregory F. Zoeller |
| South Bend, Indiana | Attorney General of Indiana |
| | Michael Gene Worden |
| | Deputy Attorney General |
| | Indianapolis, Indiana |

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Tracy Hertel, | June 22, 2016 |
| *Appellant-Defendant*, | Court of Appeals Case No. 71A03-1505-CR-475 |
| v. | Appeal from the St. Joseph Superior Court |
| State of Indiana, | The Honorable T. Edward Page, Senior Judge |
| *Appellee-Plaintiff*. | Trial Court Cause No. 71D08-0409-FA-96 |

**Brown, Judge.**

[1] Tracy Hertel appeals his convictions for two counts of dealing in a schedule II controlled substance as class B felonies, two counts of possession of two or more chemical reagents or precursors with the intent to manufacture as class D felonies, possession of a schedule IV controlled substance as a class D felony, possession of marijuana as a class A misdemeanor, and possession of hashish as a class A misdemeanor. He raises three issues which we consolidate and restate as:

     I.      Whether Hertel was denied his right to a speedy trial; and

     II.     Whether the trial court abused its discretion in admitting certain evidence.

We affirm.

*Facts and Procedural History*

[2] In September 2004, the Indiana State Police requested search warrants for the home of Hertel's girlfriend on Altgeld Street in South Bend and storage units rented by Hertel. The affidavits requesting the warrants alleged that the police searched an address in St. Joseph County that was rented by Kevin Smith, and that the search revealed items consistent with the manufacture of methamphetamine packaged in United States Post Office priority mailboxes. The affidavits stated that Smith said that he assisted Hertel move laboratory equipment and/or chemicals from Hertel's home to a storage facility and outbuilding, and that Smith consumed methamphetamine given to him by Hertel. The affidavits also stated that Smith provided a digital camera, which

he said belonged to Hertel, and that this camera had images of laboratory equipment previously in production at Hertel's residence stored on it. And the affidavits indicated that Smith called Hertel, that Smith asked Hertel "Did you get rid of everything," and Hertel replied "Pretty much" and also referenced the postal boxes. Direct Appeal Appellant's Supplemental Appendix Volume II at 3, 6-7, 11, 15.

[3] On September 24, 2004, the trial court granted the search warrants, and police found items they believed were related to the illegal manufacture of drugs and illegal substances.

[4] On September 27, 2004, the State charged Hertel with several drug-related counts. On October 28, 2004, his counsel filed an appearance and Motions to Reduce Bail, for a Speedy Trial, to Dismiss, to Strike and for Discovery. On November 5, 2004, the court scheduled the trial for January 4, 2005.

[5] On December 14, 2004, Hertel filed a number of motions including a motion to suppress the evidence seized at the Altgeld property and the storage facilities. His motion to suppress alleged that the State misunderstood the nature of a statement against penal interest, that probable cause was so lacking as to deem relying on the affidavits entirely unreasonable because Smith's reliability was never established, and the affidavits were lacking in indicia of reliability as to the particularity requirements.

[6] The court held a hearing that same day, and Hertel's counsel stated that Hertel wished to pursue his motion to suppress evidence. When the court indicated

that it would not be able to hear the case on January 4th because Hertel was pursuing a motion to suppress, his counsel stated: "My recommendation, Your Honor, would be to combine the motion to suppress with the trial." Transcript of December 14, 2004 Hearing at 7. The court stated that there was no sense in doing that because "as a practical matter, a motion to suppress, which is anticipatory as to what evidence comes in or does not come in, needs to be held." *Id.* at 7-8. The court stated that if Hertel wished to pursue the motion to suppress, then it constituted a waiver of his right to a speedy trial.

[7] On December 21, 2004, Hertel filed exhibits to support his motion to suppress. That same day, the court held a hearing and stated: "I view and continue to view the filing of the motion to suppress on December 14th as an act inconsistent with a motion for speedy trial. So, from my standpoint, the motion for speedy trial does not exist." Transcript of December 21, 2004 Hearing at 76. Hertel's counsel indicated that Hertel "does want to keep the speedy trial for now." *Id.* at 82. The court scheduled a hearing for January 7, 2015. On January 4, 2005, Hertel filed a brief in support of his motion to suppress.

[8] On January 7, 2005, the court heard arguments regarding Hertel's motion to suppress and motion for a speedy trial. His counsel discussed several police reports which he alleged demonstrated that the police knew Smith was unreliable because he had lied to the police on several occasions, and that this information was excluded from the affidavits for the search warrants. After some discussion, the court had the reports marked as Defendant's Exhibit A and stated that it was not going to alter its decision with respect to the motion

for a speedy trial. Hertel's counsel stated that he wished to preserve the issue for appeal. The court denied Hertel's request to reconsider the denial of the motion for a speedy trial and took his motion to suppress under advisement.

[9] On January 14, 2005, Hertel's counsel filed a Motion to Discharge and a Motion to Withdraw. On January 21, 2005, the court entered an order denying the motion to suppress, specifically, finding that a substantial portion of the affidavits related to hearsay information provided by Smith, that Smith's hearsay statements were not declarations against his penal interests, and that the affidavits "establish that when the digital camera was provided by Smith, police were aware that it was not his property, but rather Hertel's," and that the viewing of the images in it amounted to an unlawful search of Hertel's property. Appellant's Appendix at 479. The court found that the "inclusion of the information regarding the images of laboratory equipment discovered in the search of [Hertel's] camera was a substantial basis for the warrant, thereby tainting the probable cause determination." *Id.* at 480. The court mentioned the good faith exception and found that the warrants issued were free from obvious defects and that the officers conducting the searches reasonably believed the search warrants were valid.

[10] On February 1, 2005, the court held a hearing at which Hertel moved for a speedy trial, and the court scheduled a hearing for March 22, 2005, and a trial for April 5, 2005.[1]

[11] A hearing was held on March 8, 2005. The court and the parties discussed correspondence from Hertel to the court and to another trial court judge. Upon questioning by the court, Hertel indicated that he wished to have his public defender continue to represent him.

[12] On March 17, 2005, the State filed a motion to continue the trial. On March 22, 2005, the court granted the State's motion to continue and rescheduled the trial for June 13, 2005. On March 22, 2005, Hertel was released from custody.

[13] On April 28, 2005, Hertel's counsel moved to withdraw his appearance. On May 12, 2005, the court held a hearing, and Hertel's counsel stated that he and Hertel had resolved half of their issues, but were still "working on some other things." Transcript of May 12, 2005 Hearing at 48. A hearing was held on May 19, 2005, and the court granted the motion to withdraw filed by Hertel's counsel, recused himself, nominated three judges for successorship, rescheduled a hearing for June 24, 2005, and vacated the trial date.

[14] On July 22, 2005, the court held a hearing and stated that there were three judges "named as a panel and we've been together twice now in an effort to

---

[1] The record does not contain a copy of the transcript of the February 1, 2005 hearing.

allow you time to hire your lawyer, which you felt you needed that for."
Transcript of July 22, 2005 Hearing at 51. The court scheduled a hearing for
August 30, 2005, and indicated that would allow enough time for Hertel's strike
of one of the possible judges, and that hopefully the new judge would be able to
hold a hearing on August 30th.

[15] On August 30, 2005, the court held a hearing, and Hertel indicated that he was
"filing a motion to suppress today, because I was held in jail beyond my rights."
Transcript of August 30, 2005 Hearing at 4. The prosecutor suggested
scheduling a hearing in about a month, and Hertel stated: "That sounds fair."
*Id.* at 6. Hertel, *pro se*, filed a motion to dismiss, and the court scheduled a
hearing on that motion for September 30, 2005.[2] When asked by the court if he
was requesting a public defender, Hertel answered:

> Well I'm not sure that if I could borrow money from my family.
> My concern, frankly, is that sometimes when you get a public
> defender – I've been in court many, many times – they come in
> ten minutes before court, and that's the amount of time you get
> to spend with them.

*Id.* at 9. The court stated that if Hertel was not requesting a public defender,
then it would not address the issue.

---

[2] On appeal, Hertel cites "Supp. App. I 26-29" after the statement that he filed a "*pro se* 'motion to dismiss'
that was substantially a motion to discharge on 08-30-05." Appellant's Brief at 24. Appellant's Supplemental
Appendix Volume I does not contain Hertel's motion to dismiss.

[16] On September 30, 2005, the court held a hearing on Hertel's motion to dismiss and denied the motion. After some discussion, Hertel indicated that he needed an attorney appointed for him. The court indicated that it did not think a public defender could reasonably prepare for trial on October 24, 2005, but appointed a public defender and scheduled an appearance date of October 5, 2005.

[17] A hearing was held on October 5, 2005, and a new public defender appeared on Hertel's behalf. The court asked if a trial should be scheduled within seventy days, and Hertel's counsel suggested setting a hearing two or three weeks away and "then we come back and figure out where we're at." Transcript of October 5, 2005 Hearing at 26. Upon questioning by the court, Hertel indicated that he understood that the time from that date to the next hearing date did not count against the State for Criminal Rule 4 purposes.

[18] On November 14, 2005, the court held a hearing and Hertel's counsel discussed motions that Hertel had filed, including a motion to terminate counsel and to proceed on the issue of a motion for certification of interlocutory appeal on the speedy trial issue. The court informed Hertel that he was either going to have an attorney or would represent himself, that it would give him time to discuss his motions with his attorney, and scheduled a hearing for November 21, 2005.

[19] On November 21, 2005, Hertel's counsel indicated that he was willing to join in Hertel's *pro se* motion to certify the denial of his motion for a speedy trial for interlocutory appeal, and a January 20, 2006 hearing was set.

[20] On January 20, 2006, Hertel's counsel indicated that he needed more time to do further research. After some discussion, the court denied Hertel's request to certify the denial of his motion for a speedy trial. The prosecutor requested that the court schedule a trial, and a trial was set for May 22, 2006.

[21] On March 24, 2006, the court held a hearing at which Hertel's counsel requested a "short delay." Transcript of March 24, 2006 Hearing at 47. The court observed that Hertel had filed a notice of termination of counsel, and the court recused for reasons of personal health. A new trial court judge was assigned the following day.

[22] On May 5, 2006, Hertel, by counsel, filed a motion to continue, and the court granted the motion. After multiple continuances requested by Hertel and granted by the court, the court held a jury trial in January 2008. Hertel's counsel objected to the admission of the evidence discovered during the searches and adopted the objection of Hertel's prior counsel. The court overruled the objection. The jury found Hertel guilty of two counts of dealing in a schedule II controlled substance as class B felonies, two counts of possession of two or more chemical reagents or precursors with the intent to manufacture as class D felonies, possession of a schedule IV controlled substance as a class D felony, possession of marijuana as a class A misdemeanor, and possession of hashish as a class A misdemeanor.

[23] On April 28, 2008, Hertel filed a notice of appeal. On March 31, 2009, this court entered an order granting Hertel's motion for remand pursuant to his

*Davis/Hatton* petition to allow him to file a petition for post-conviction relief.[3] We also ordered that following the post-conviction proceedings, Hertel may, upon the filing of a new notice of appeal, raise in a subsequent appeal any of the issues which could have been raised in the direct appeal together with any appealable issues arising from post-conviction proceedings.

[24] On May 13, 2010, Hertel filed a *pro se* petition for post-conviction relief. On August 26, 2010, the State filed a response and denied Hertel's allegations related to the grounds for vacating, correcting, or setting aside the judgment and sentence.

[25] On March 26, 2012, Hertel filed a *pro se* motion for summary judgment and a fifty-eight page memorandum. He asserted that he filed the motion pursuant to Post-Conviction Rule 1(4)(g)[4] and Ind. Trial Rule 56. On July 3, 2012, the State filed a response to the motion asserting that it did not admit any of the

---

[3] The *Davis/Hatton* procedure involves a termination or suspension of a direct appeal already initiated, upon appellate counsel's motion for remand or stay, to allow a post-conviction relief petition to be pursued in the trial court. *Taylor v. State*, 929 N.E.2d 912, 917 n.1 (Ind. Ct. App. 2010) (citing *State v. Lopez*, 676 N.E.2d 1063, 1069 (Ind. Ct. App. 1997) (citing *Hatton v. State*, 626 N.E.2d 442 (Ind. 1993); *Davis v. State*, 267 Ind. 152, 368 N.E.2d 1149 (1977)), *trans. denied*), *trans. denied*; Ind. Appellate Rule 37(A) ("At any time after the Court on Appeal obtains jurisdiction, any party may file a motion requesting that the appeal be dismissed without prejudice or temporarily stayed and the case remanded to the trial court . . . for further proceedings. The motion must be verified and demonstrate that remand will promote judicial economy or is otherwise necessary for the administration of justice.").

[4] Ind. Post-Conviction Rule 1(4)(g) provides: "The court may grant a motion by either party for summary disposition of the petition when it appears from the pleadings, depositions, answers to interrogatories, admissions, stipulations of fact, and any affidavits submitted, that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. The court may ask for oral argument on the legal issue raised. If an issue of material fact is raised, then the court shall hold an evidentiary hearing as soon as reasonably possible."

allegations contained in Hertel's memorandum of law in support of summary judgment and requesting the court deny the motion.

[26] After multiple hearings, the post-conviction court denied Hertel's petition in a forty-nine page order on April 22, 2015. With respect to the summary judgment motion, the court's order stated that "[a]ll other motions which may still be considered to be pending, including motions for summary judgment filed before and after the hearings on the petition for postconviction relief, have been or are hereby denied."[5] Appellant's Appendix at 777. The court's order also stated that the only evidence before the court consisted of the testimony and evidence admitted at the July 2013 hearings, together with the records of which the court properly took judicial notice, and that "[a]ll other motions requesting the court to take judicial notice of other pleadings or records are hereby denied." *Id.*

## Discussion

[27] Hertel is proceeding *pro se*. Such litigants are held to the same standard as trained counsel. *Evans v. State*, 809 N.E.2d 338, 344 (Ind. Ct. App. 2004), *trans. denied*. To the extent that he fails to develop a cogent argument or cite to the record, we conclude that such arguments are waived. *See Cooper v. State*, 854 N.E.2d 831, 834 n.1 (Ind. 2006) (holding that the defendant's contention was

---

[5] In his brief, Hertel states that the trial court summarily denied his motion for summary judgment on November 27, 2012, but does not cite to the record.

waived because it was "supported neither by cogent argument nor citation to authority"); *Shane v. State*, 716 N.E.2d 391, 398 n.3 (Ind. 1999) (holding that the defendant waived argument on appeal by failing to develop a cogent argument); *Smith v. State*, 822 N.E.2d 193, 202-203 (Ind. Ct. App. 2005) ("Generally, a party waives any issue raised on appeal where the party fails to develop a cogent argument or provide adequate citation to authority and portions of the record."), *trans. denied*.

[28] For all the issues raised by Hertel, he relies upon facts he asserts the State admitted by failing to file a timely reply to his motion for summary judgment. We note that the issues he raises in this appeal, i.e., his right to a speedy trial and the admission of evidence, relate to his direct appeal and are reviewable now under the *Davis/Hatton* procedure in the context of a direct appeal. Such claims are freestanding and unavailable in post-conviction proceedings. *See Reed v. State*, 866 N.E.2d 767, 768 (Ind. 2007) (holding that only issues not known at the time of the original trial or issues not available on direct appeal may be properly raised through post-conviction proceedings); *Sanders v. State*, 765 N.E.2d 591, 592 (Ind. 2002) (holding that in "post-conviction proceedings, complaints that something went awry at trial are generally cognizable only when they show deprivation of the right to effective counsel or issues demonstrably unavailable at the time of trial or direct appeal" and that it is wrong to review the petitioner's fundamental error claim in a post-conviction proceeding); *Lambert v. State*, 743 N.E.2d 719, 726 (Ind. 2001) (holding that post-conviction procedures do not provide a petitioner with a "super-appeal" or

opportunity to consider freestanding claims that the original trial court committed error and that such claims are available only on direct appeal), *reh'g denied*, *cert. denied*, 534 U.S. 1136, 122 S. Ct. 1082 (2002). Accordingly, we will review the issues in the context of a direct appeal.

However, even assuming that Post-Conviction Rule 1(4)(g) applies, we cannot say that the allegations in Hertel's motion for summary judgment should be deemed admitted by the State. As noted, Ind. Post-Conviction Rule 1(4)(g) provides that "[t]he court may grant a motion by either party for summary disposition of the petition when it appears from the pleadings, depositions, answers to interrogatories, admissions, stipulations of fact, and any affidavits submitted, that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." Prior to Hertel's filing of his motion for summary judgment, the State filed an answer to his petition for post-conviction relief denying the allegations in his petition. Under these circumstances, we cannot say that the State admitted the allegations in Hertel's motion for summary judgment. *See State v. Fair*, 450 N.E.2d 66, 68-69 (Ind. 1983) (observing the State's answers to petitioner's petitions and holding that the post-conviction court was not faced with a petition in which the allegations of fact were required to be deemed admitted).

I.

The first issue is whether the trial court improperly denied Hertel's motion for discharge under Ind. Criminal Rule 4(B). Hertel argues that the length of delay

of more than three years resulted in a denial of his speedy trial rights under the United States Constitution and the Indiana Constitution.

[31] The State contends that Hertel's claim fails because the filing of the motion to suppress evidence so close to the trial date necessitated a continuance of the jury trial, and that Hertel failed to maintain a position consistent with his speedy trial request. The State also asserts that the motion to suppress could not have been heard during the jury trial because if the motion had been granted it would have obviated the need for the expense and time of a jury trial. The State argues that Hertel provides almost no analysis of his Sixth Amendment speedy trial claim and therefore waived the issue, and that, waiver notwithstanding, his claim fails.

[32] "The broad goal of Indiana's Criminal Rule 4 is to provide functionality to a criminal defendant's fundamental and constitutionally protected right to a speedy trial." *Austin v. State*, 997 N.E.2d 1027, 1037 (Ind. 2013). "It places an affirmative duty on the State to bring the defendant to trial, but at the same time is not intended to be a mechanism for providing defendants a technical means to escape prosecution." *Id.* The Indiana Supreme Court has noted that "though Rule 4(B)'s intent is to effectuate the rights guaranteed by the Sixth Amendment to the U.S. Constitution and Article 1, Section 12 of the Indiana Constitution, we emphasize that reviewing Rule 4(B) challenges is separate and distinct from reviewing claimed violations of those constitutional provisions." *Id.*

[33]     Ind. Criminal Rule 4(B)(1) provides, in pertinent part:

> If any defendant held in jail on an indictment or an affidavit shall move for an early trial, he shall be discharged if not brought to trial within seventy (70) calendar days from the date of such motion, except where a continuance within said period is had on his motion, or the delay is otherwise caused by his act, or where there was not sufficient time to try him during such seventy (70) calendar days because of the congestion of the court calendar.

[34]     "The purpose served by Crim. R. 4(B) is to prevent a defendant from being detained in jail for more than 70 days after requesting an early trial." *Williams v. State*, 631 N.E.2d 485, 486 (Ind. 1994), *reh'g denied*. Restraint on liberty is one policy underlying Rule 4(B), but it is not the only policy. *Poore v. State*, 685 N.E.2d 36, 40 (Ind. 1997). "There is also the anxiety and humiliation that can accompany public accusation." *Id.* "These considerations are unrelated to whether the accused is incarcerated on other grounds at the time the speedy trial is demanded." *Id.* "Equally importantly, a prompt trial enables a defendant to make his or her case before exculpatory evidence vanishes or becomes stale." *Id.*

[35]     "The onus is on the State, not the defendant, to expedite prosecution." *Jackson v. State*, 663 N.E.2d 766, 769 (Ind. 1996). A defendant has no duty to bring himself to trial; the State has that duty as well as the duty of insuring that the trial is consistent with due process. *Id.* A movant for an early trial must maintain a position which is reasonably consistent with the request that he has made. *Wilburn v. State*, 442 N.E.2d 1098, 1103 (Ind. 1982). "[I]t is incumbent

upon defendant to object at the earliest opportunity when his trial date is scheduled beyond the time limits prescribed by Ind. R. Crim. P. 4(B)(1)." *Smith v. State*, 477 N.E.2d 857, 861-862 (Ind. 1985). "This requirement is enforced to enable the trial court to reset the trial date within the proper time period." *Dukes v. State*, 661 N.E.2d 1263, 1266 (Ind. Ct. App. 1996). "A defendant who permits the court, without objection, to set a trial date outside the 70-day limit is considered to have waived any speedy trial request." *Stephenson v. State*, 742 N.E.2d 463, 488 (Ind. 2001), *cert. denied*, 534 U.S. 1105, 122 S. Ct. 905 (2002).

[36] Hertel filed his motion for a speedy trial on October 28, 2004. Based upon Rule 4(B), he was to be brought to trial within seventy days or by January 6, 2005. The court scheduled a trial for January 4, 2005. Hertel filed his motion to suppress on December 14, 2004, twenty-one days before the scheduled trial date. On December 21, 2004, he filed exhibits to his motion to suppress, and on January 4, 2005, he filed a supporting brief.

[37] The court held a hearing on the motion to suppress on January 7, 2005, and denied it on January 21, 2005. Even assuming that the motion to suppress itself did not constitute an abandonment of Hertel's motion for a speedy trial, we conclude that that the delay of thirty-eight days between the date he filed the motion and the date the court ruled on the motion is attributable to Hertel. This delay extended the seventy-day limit by thirty-eight days to February 13, 2005. *See Curtis v. State*, 948 N.E.2d 1143, 1150 (Ind. 2011) ("Under the facts of this case, we find the time between the filing of the motion to suppress and the trial court's ruling on the motion is attributable to Curtis. Although the motion

was not a dilatory tactic, Curtis filed it approximately three weeks before trial was set. In the motion, Curtis asked that the trial court set the matter for a hearing prior to the trial date. But Indiana Trial Rule 53.1 affords trial courts more time—and reality likely requires more time—to deal with motions. The setting of a trial date is not determinative of what delays are chargeable to the defendant, but a pretrial motion's proximity to a set trial date weighs in favor of attributing a delay to a defendant.") (internal citation omitted); *see also* Ind. Criminal Rule 4(F) ("When a continuance is had on motion of the defendant, or delay in trial is caused by his act, any time limitation contained in this rule shall be extended by the amount of the resulting period of such delay caused thereby.").

[38] Hertel filed a motion for discharge on January 14, 2005. However, this motion was premature when considering the delay caused by his motion to suppress, and he did not file a subsequent motion for discharge. Instead, he filed a second motion for a speedy trial on February 1, 2005. Even assuming that this motion was a motion for discharge, it was also premature. Further, the Indiana Supreme Court has held that a second request for a speedy trial is an abandonment of the first request for a speedy trial. *See Minneman v. State*, 441 N.E.2d 673, 677 (Ind. 1982) ("When a defendant files a motion for early trial under Ind. R. Crim. P. 4(B), such filing constitutes an abandonment of previous motions for early trial filed by that defendant."), *cert. denied*, 461 U.S. 933, 103 S. Ct. 2099 (1983); *Mickens v. State*, 439 N.E.2d 591, 595 (Ind. 1982) (observing that the defendant had filed multiple requests for a speedy trial and holding that

the defendant abandoned his initial speedy trial motion by pursuing plea negotiations and by making a second motion rather than by seeking discharge on the basis of the initial motion); *Rutledge v. State*, 426 N.E.2d 638, 640 (Ind. 1981) ("Under the circumstances of this case then, when on January 17, 1979, appellant requested that he be tried within the next succeeding seventy-day period, rather than discharged upon the basis of his first motion, he is deemed to have abandoned that first motion."); *see also* 16B INDIANA PRACTICE § 19.3 ("A motion for a continuance or a second request for an early trial would also be inconsistent with a prior request for an early trial and would therefore waive the right to be tried within seventy days of the earlier request.") (footnotes omitted).

[39] Based upon Rule 4(B), Hertel was to be brought to trial within seventy days of his February 1, 2005 motion for a speedy trial or by April 12, 2005. On March 22, 2005, he was released from custody. Given his release prior to the expiration of the seventy-day period, we find that the objective of Ind. Criminal Rule 4(B) was satisfied. *See Williams*, 631 N.E.2d at 487 ("Once released from custody, a defendant receives no further benefit from Crim. R. 4(B).").[6]

[40] With respect to his discussion of the February 1, 2005 hearing, we observe that, while he allegedly quotes from the transcript of the February 1, 2005 hearing in his brief, he does not cite to the record and the record does not contain a copy

---

[6] Hertel does not specifically cite to or develop a cogent argument under Ind. Criminal Rule 4(C).

of the transcript of this hearing.[7]  We also observe that the post-conviction court listed the transcripts of the hearings that it was receiving into evidence and did not list the transcript of the February 1, 2005 hearing.  Accordingly, we conclude that any argument relying on this hearing is waived.  *See Meehan v. State*, 7 N.E.3d 255, 257 n.4 (Ind. 2014) (holding that, pursuant to Ind. Appellate Rule 9(F)(5),[8] by failing to present on appeal a complete record of the issues for which the appellant claimed errors, specifically a transcript from the hearing on the State's motion to amend the charging information, the defendant waived the right to appellate review of that issue); *Miller v. State*, 753 N.E.2d 1284, 1287 (Ind. 2001) (observing that the defendant did not provide the Court with a transcript of a hearing, that the defendant gave no explanation as to why the proceeding was missing from the record, and that the Court has previously held that, without submitting a complete record of the issues for which an appellant claims error, the appellant waives the right to appellate review, and holding that the defendant, as the appellant, has the responsibility to present a sufficient record that supports his claim in order for an intelligent review of the issues), *reh'g denied*; *Hatchett v. State*, 33 N.E.3d 1125, 1129 (Ind. Ct. App. 2015)

---

[7] Hertel's notice of appeal did not specifically request a transcript of the February 1, 2005 hearing.  Rather, he requested transcripts of "ALL hearings that have not yet been transcribed, specifically 07/25/2013 Evidentiary Hearing[,] 07/31/2013 Evidentiary Hearing[, and] 07/16/2014 Evidentiary Hearing."  Notice of Appeal.

[8] Ind. Appellate Rule 9(F)(5) provides for: "A designation of all portions of the Transcript necessary to present fairly and decide the issues on appeal.  If the appellant intends to urge on appeal that a finding of fact or conclusion thereon is unsupported by the evidence or is contrary to the evidence, the Notice of Appeal shall request a Transcript of all the evidence.  In Criminal Appeals, the Notice of Appeal must request the Transcript of the entire trial or evidentiary hearing, unless the party intends to limit the appeal to an issue requiring no Transcript."

(holding that the defendant waived his argument regarding voir dire by failing to provide a complete transcript).

[41] We next turn to Hertel's argument that the length of delay of more than three years resulted in a denial of his speedy trial rights under the United States Constitution and the Indiana Constitution. The Sixth Amendment to the United States Constitution provides, in relevant part, that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial . . . ." Article 1, Section 12 of the Indiana Constitution states, in applicable part, that "[j]ustice shall be administered freely, and without purchase; completely, and without denial; speedily, and without delay."

[42] To resolve claimed speedy trial violations under our state constitution, we apply the federal speedy trial analysis of *Barker v. Wingo*, 407 U.S. 514, 92 S. Ct. 2182, (1972). *Logan v. State*, 16 N.E.3d 953, 961 (Ind. 2014). In *Barker*, the United States Supreme Court identified four factors to balance when considering whether the defendant has been deprived of his or her right to a speedy trial: (1) length of the delay; (2) reason(s) for the delay; (3) defendant's assertion of his or her right; and (4) prejudice to the defendant. *Id.* at 961-962 (citing *Barker*, 407 U.S. at 530, 92 S. Ct. 2182). "The Court characterized this approach as 'a balancing test, in which the conduct of both the prosecution and the defendant are weighed.'" *Id.* at 962 (quoting *Barker*, 407 U.S. at 530, 92 S. Ct. 2182). "'[T]o some extent a triggering mechanism,' the appropriateness of the length of delay between the State's filing of charges against the defendant and the beginning of the defendant's trial is 'necessarily dependent upon the peculiar

circumstances of the case.'" *Id.* (quoting *Barker*, 407 U.S. at 530-531, 92 S. Ct. 2182).

[43] While the length of the delay of almost three years and four months between the date the State charged Hertel on September 27, 2004, and the date his trial began on January 25, 2008, is substantial, Hertel is responsible for many of the delays. As discussed, Hertel filed a motion to suppress on October 28, 2004, which resulted in a delay. Following the trial court judge's recusal on May 19, 2005, the court held a hearing on July 22, 2005, and told Hertel that there were three judges named as a panel and that "we've been together twice now in an effort to allow you time to hire your lawyer, which you felt you needed that for." Transcript of July 22, 2005 Hearing at 51. On August 30, 2005, Hertel filed a motion to suppress, the prosecutor suggested scheduling a hearing in about a month, and Hertel stated: "That sounds fair." Transcript of August 30, 2005 Hearing at 6. On October 5, 2005, the court held a hearing, and Hertel's newly appointed counsel suggested scheduling a hearing two or three weeks away and "then we come back and figure out where we're at." Transcript of October 5, 2005 Hearing at 26. On November 14, 2005, the court held a hearing at which Hertel's counsel discussed motions that Hertel filed including a motion to terminate counsel and to proceed on the issue of a motion for certification of interlocutory appeal, and the court stated that it would give Hertel time to discuss his motions with his attorney and scheduled a hearing for November 21, 2005. On January 20, 2006, Hertel's counsel indicated that he needed to do further research. After the court scheduled a trial for May 22,

2006, Hertel's counsel requested a "short delay" at the March 24, 2006 hearing. Transcript of March 24, 2006 Hearing at 47. On May 5, 2006, Hertel's counsel filed a motion to continue, and the court granted the motion. Hertel requested further continuances on December 14, 2006, April 2, 2007, and September 11, 2007, and the court granted these motions.

[44] Hertel asserted his right to a speedy trial, but also requested multiple continuances that were granted. He does not develop an argument that he was prejudiced. Under the circumstances, we cannot say that the delay resulted in a denial of Hertel's speedy trial rights under the United States Constitution or the Indiana Constitution.[9]

## II.

[45] The next issue is whether the trial court abused its discretion by admitting the evidence obtained as a result of the searches. To the extent Hertel asserts that the trial court improperly granted the motion to suppress, "[w]here a defendant does not perfect an interlocutory appeal from a trial court's ruling on a motion to suppress, but objects to the admission of the evidence at trial, the issue on appeal is more appropriately framed as whether the trial court abused its discretion by admitting the evidence at trial." *Danner v. State*, 931 N.E.2d 421,

---

[9] Hertel also asserts that he was forced to surrender the right to a speedy trial to assert his right to be free of unreasonable searches. He relies upon the State's alleged admissions, which, as discussed above, the State did not admit. He also cites to the transcript of the February 1, 2005 hearing, which is not included in the record. We cannot say that Hertel has demonstrated that he was forced to improperly choose between two rights.

426 (Ind. Ct. App. 2010), *trans. denied*; *see also Clark v. State*, 994 N.E.2d 252, 259 (Ind. 2013).

[46] We review the trial court's ruling on the admission or exclusion of evidence for an abuse of discretion. *Roche v. State*, 690 N.E.2d 1115, 1134 (Ind. 1997), *reh'g denied*. We reverse only where the decision is clearly against the logic and effect of the facts and circumstances. *Joyner v. State*, 678 N.E.2d 386, 390 (Ind. 1997), *reh'g denied*. Even if the trial court's decision was an abuse of discretion, we will not reverse if the admission constituted harmless error. *Fox v. State*, 717 N.E.2d 957, 966 (Ind. Ct. App. 1999), *reh'g denied*, *trans. denied*. Also, we may affirm a trial court's decision to admit evidence seized as a result of a search based on any legal theory supported by the record. *Edwards v. State*, 724 N.E.2d 616, 620-621 (Ind. Ct. App. 2000), *trans. denied*. We review *de novo* a ruling on the constitutionality of a search or seizure, but we give deference to a trial court's determination of the facts, which will not be overturned unless clearly erroneous. *Campos v. State*, 885 N.E.2d 590, 596 (Ind. 2008); *see also Carpenter v. State*, 18 N.E.3d 998, 1001 (Ind. 2014) (holding that the ultimate determination of the constitutionality of a search or seizure is a question of law that we consider *de novo*).

[47] "A warrant and its underlying affidavit must comply with the Fourth Amendment prohibition on unreasonable searches and seizures, as well as Indiana constitutional and statutory law." *Jackson v. State*, 908 N.E.2d 1140, 1143 (Ind. 2009). "The lack of probable cause does not automatically require the suppression of evidence obtained during a search conducted pursuant to a

warrant." *Id.* In *United States v. Leon*, 468 U.S. 897, 104 S. Ct. 3405 (1984), the United States Supreme Court determined that the exclusionary rule does not require the suppression of evidence obtained in reliance on a defective search warrant if the police relied on the warrant in objective good faith. *Id.* There are in turn exceptions to the good faith exception, and the good faith exception does not apply where: (1) the warrant is based on false information knowingly or recklessly supplied; (2) the warrant is facially deficient; (3) the issuing magistrate is not detached and neutral; or (4) the affidavit or sworn testimony upon which the probable cause rests is so lacking in indicia of probable cause as to render an official belief in the existence of the warrant unreasonable. *Smith v. State*, 982 N.E.2d 393, 406-407 (Ind. Ct. App. 2013) (citing *Johnson v. State*, 952 N.E.2d 305, 310-311 (Ind. Ct. App. 2011), *trans. denied*), *trans. denied*. The good faith exception to the warrant requirement has been codified by Ind. Code § 35-37-4-5.[10] The Indiana Supreme Court held that "the heart of the matter is not

---

[10] Ind. Code § 35-37-4-5 provides:

> (a) In a prosecution for a crime or a proceeding to enforce an ordinance or a statute defining an infraction, the court may not grant a motion to exclude evidence on the grounds that the search or seizure by which the evidence was obtained was unlawful if the evidence was obtained by a law enforcement officer in good faith.

> (b) For purposes of this section, evidence is obtained by a law enforcement officer in good faith if:

>> (1) it is obtained pursuant to:

>>> (A) a search warrant that was properly issued upon a determination of probable cause by a neutral and detached magistrate, that is free from obvious defects other than nondeliberate errors made in its preparation, and that was reasonably believed by the law enforcement officer to be valid; or
>>> (B) a state statute, judicial precedent, or court rule that is later declared unconstitutional or otherwise invalidated; and

whether a court of review agrees or disagrees about the existence of probable cause sufficient to support the issuance of a search warrant; rather the issue is whether when viewed from a totality of the circumstances there was enough evidence before the issuing court that would allow the court to make that call." *Jackson*, 908 N.E.2d at 1144-1145.

[48] Hertel bases his arguments on the State's alleged admissions, which we concluded the State did not admit as discussed above. Many of his arguments cite merely to his petition for post-conviction relief and his memorandum of law in support of summary judgment, but not to the transcripts or exhibits. He mentions the police reports that allegedly showed that Smith was not reliable, but he does not cite to them on appeal or develop an argument regarding them. We cannot say that an exception to the good faith exception applies. Further, the affidavits described the house or storage lockers to be searched, detailed Smith's statements that he consumed methamphetamine provided by Hertel, described the result of the search of the property rented by Smith as including items associated with the production of methamphetamine packaged in United States Post Office priority mailboxes, and referenced the recorded phone call between Smith and Hertel in which Hertel answered Smith's question of

---

(2) the law enforcement officer, at the time he obtains the evidence, has satisfied applicable minimum basic training requirements established by rules adopted by the law enforcement training board under IC 5-2-1-9.

(c) This section does not affect the right of a person to bring a civil action against a law enforcement officer or a governmental entity to recover damages for the violation of his rights by an unlawful search and seizure.

whether he "g[o]t rid of everything," by answering "[p]retty much," and referenced the postal boxes. Appellant's Supplemental Appendix Volume II at 3, 6-7, 11, 15. Under the circumstances, we cannot say that reversal is warranted.

## Conclusion

[49] For the foregoing reasons, we affirm Hertel's convictions.

[50] Affirmed.

Kirsch, J., and Mathias, J., concur.