In the

# United States Court of Appeals
## For the Seventh Circuit

———————————

No. 22-1780

MARCUS CONNER,

*Petitioner-Appellant,*

*v.*

DENNIS REAGLE, Warden,

*Respondent-Appellee.*

———————————

Appeal from the United States District Court for the
Southern District of Indiana, Indianapolis Division.
No. 1:21-cv-2188-SEB-MPB — **Sarah Evans Barker**, *Judge.*

———————————

ARGUED FEBRUARY 14, 2023 — DECIDED SEPTEMBER 12, 2023

———————————

Before ROVNER, KIRSCH, and JACKSON-AKIWUMI, *Circuit Judges.*

ROVNER, *Circuit Judge.* This case presents a threshold question of whether the one-year period for filing a petition for a writ of habeas corpus can be equitably tolled. Petitioner Marcus Conner was advised by his postconviction counsel to postpone filing his habeas petition until the United States Supreme Court first ruled on the petition for a writ of certiorari counsel filed with the United States Supreme Court at the

conclusion of state postconviction proceedings. Conner's counsel told him that the cert. petition would pause the clock on his time to seek habeas relief. Conner relied on that advice, to his detriment: in actuality, the one-year period in which to file the habeas petition continued to run even while the cert. petition was pending. In his habeas petition, Conner presents a claim that his trial counsel was ineffective for failing to pursue a Sixth Amendment speedy trial claim. But the district court dismissed the petition because Conner filed it more than one year after his conviction became final. *See* 28 U.S.C. § 2244(d)(1)(A) & (d)(2). The court was not convinced that the erroneous advice Conner's postconviction counsel gave him regarding the deadline for his habeas petition was sufficient to equitably toll the one-year deadline. Consequently, the court did not reach the merits of Conner's ineffective assistance claim. *Conner v. Reagle*, No. 1:21-cv-02188-SEB-MPB, 2022 WL 1156723 (S.D. Ind. Apr. 19, 2022).

Conner's brief on appeal opens with a nod to the conventional wisdom deeming it foolish for a criminal defendant to represent himself. We presume that the training, knowledge, and experience of an attorney is needed to guide the defendant through a legal terrain that is often treacherous. The wisdom has particular force in the habeas corpus context, which is governed by a set of strict deadlines, byzantine procedural default rules, and a body of jurisprudence that is quite complex. *See Edwards v. Carpenter*, 529 U.S. 446, 454, 120 S. Ct. 1587, 1593 (2000) (Breyer, J., concurring); *Gray v. Zatecky*, 865 F.3d 909, 912 (7th Cir. 2017); *Howard v. O'Sullivan*, 185 F.3d 721, 724 (7th Cir. 1999).

But, as Conner argues, this case turns the conventional wisdom on its head, because the individuals who are

responsible for his predicament are his lawyers: the trial attorneys who (he asserts) were ineffective in failing to invoke his Sixth Amendment right to a speedy trial, and the postconviction lawyer who gave him erroneous advice as to the deadline for his habeas petition. The postconviction lawyer's mistake was particularly grave, because Conner was prepared to draft and file his habeas petition raising the ineffectiveness of his trial counsel in a timely manner, but the lawyer told him to hold off until the Supreme Court resolved his cert. petition. Because Conner heeded his lawyer's advice, the doors to the federal courthouse, and any possibility of relief in habeas corpus for his trial counsel's purported ineffectiveness in failing to protect his Sixth Amendment speedy trial right, are now closed to him.

Conner asks us to deem his postconviction lawyer's ill-informed advice to delay the filing of his habeas petition as an extraordinary circumstance that effectively prevented him from filing his habeas petition on time and therefore warrants equitable tolling of the statutory deadline. However, the Supreme Court's jurisprudence, and our own, do not grant us that leeway. Recognizing that Conner was led astray by the erroneous legal advice he was given as to the habeas deadline, we nonetheless agree with the district court that binding precedent forecloses us from equitably tolling that deadline. We therefore affirm the district court's judgment.

## I.

Conner was charged in Indiana state court with three counts of felony drug dealing and maintaining a common nuisance after he sold cocaine on three occasions to two confidential informants at his home, which was located within 1,000 feet of a youth program center. After a two-day trial, a

jury convicted him on all charges, and because Conner quali-
fied as a habitual offender, he was subject to an additional pe-
riod of incarceration of up to 30 years. He was sentenced to
an aggregate term of 72 years in prison.

Conner was arrested and detained on September 19, 2012,
and he was formally charged on September 24, 2012. He re-
mained in custody pre-trial, but the trial did not commence
until July 20, 2015—a delay of 1,029 days from the charging
date (1,034 days from his arrest), or nearly three years. The
Indiana appellate court's opinions in this case set forth the
nine continuances that pushed back the trial date. Four of the
continuances were granted at the request of the prosecution
based on docket congestion and the need to try older cases
first, three more were issued on the court's own motion on the
same basis, and two were sought by the defense. Of the two
defense requests, one was due to a conflict of interest which
did not become apparent until the morning of trial, when the
prosecution disclosed the identities of its confidential inform-
ants. That hitherto unknown conflict required the replace-
ment of defense counsel and yet another continuance to allow
a new attorney to come up to speed on the case.

Conner was represented by counsel at all times in the long
run-up to the trial, but with the exception of one motion for
discharge pursuant to Indiana Criminal Rule 4 filed by de-
fense counsel in February 2015,[1] his counsel did not otherwise

---

[1] Indiana's Criminal Rule 4(A) provides:

> No defendant shall be detained in jail on a charge, with-
> out a trial, for a period in aggregate embracing more than
> six (6) months from the date the criminal charge against
> such defendant is filed, or from the date of his arrest on

(continued)

object to the multiple continuances. And at no time did trial counsel ever make a Sixth Amendment objection to the pre-trial delays. For his part, Conner voiced multiple, consistent objections to the delays and attempted in one instance to file his own Rule 4 discharge motion. But these objections were rejected out of hand on the ground that Conner was represented by counsel.

---

such charge (whichever is later); except where a continuance was had on his motion, or the delay was caused by his act, or where there was not sufficient time to try him during such period because of congestion of the court calendar; provided, however, that in the last-mentioned circumstance, the prosecuting attorney shall make such statement in a motion for continuance not later than ten (10) days prior to the date set for trial, or if such motion is filed less than ten (10) days prior to trial, the prosecuting attorney shall show additionally that the delay in filing the motion was not the fault of the prosecutor. Provided further, that a trial court may take note of congestion or an emergency without the necessity of a motion, and upon so finding may order a continuance. Any continuance granted due to a congested calendar or emergency shall be reduced to an order, which order shall also set the case for trial within a reasonable time. Any defendant so detained shall be released on his own recognizance at the conclusion of the six-month period aforesaid and may be held to answer a criminal charge against him within the limitations provided for in subsection (C) of this rule.

Indiana R. Crim. P. 4(A). Rule 4(C) establishes a presumptive trial deadline of one year for a defendant who has not been detained pre-trial; but that presumptive deadline is also subject to exceptions for continuances granted on the defendant's motion, delays caused by the defendant's actions, and for docket congestion.

On direct appeal from Conner's conviction, his counsel raised two issues: whether the trial court's findings of docket congestion necessitating multiple delays of the trial date were clearly erroneous, and whether Conner's Sixth Amendment right to a speedy trial was violated. The Indiana appellate court found no clear error in the docket-congestion findings (and thus no violation of Criminal Rule 4). It found that Conner had forfeited his constitutional speedy-trial claim by not raising any Sixth Amendment objections in the trial court, and the court did not reach the merits of that claim.[2] The court did acknowledge that the delay in bringing Conner to trial was "extraordinarily—and disconcertingly—long." *Conner v. State*, No. 20A03-1509-CR-1426, 2016 WL 3745924, at *5 (Ind. Ct. App. Jul. 13, 2016) (unpublished).

Conner then commenced a postconviction proceeding (initially *pro se*, and later with the assistance of the Indiana Public Defender, who was appointed to represent him) in which he argued, as relevant here, that his trial lawyers were ineffective for having never objected that the multiple delays in bringing him to trial were depriving him of his Sixth Amendment right to a speedy trial. An evidentiary hearing took place at which both of the two attorneys who represented Conner at the trial

---

[2] Although waiver and forfeiture have distinct meanings, Indiana law treats both waived issues (those that have been intentionally relinquished or abandoned) and forfeited issues (those that were not timely raised) as non-appealable. *See Smylie v. State*, 823 N.E.2d 679, 688 n.13 (Ind. 2005). A narrow category of what the Indiana courts describe as "fundamental errors" may be addressed notwithstanding a forfeiture. *Id.* at 689 n.16. Conner did not develop an argument in his brief on direct appeal that the delay in bringing him to trial constituted a fundamental error, *see* R. 9-7 at 24, and the Indiana appellate court consequently did not consider this possibility.

level were witnesses: one testified that although he was familiar with Criminal Rule 4 and the Sixth Amendment right to a speedy trial, he did not contemplate that a speedy trial motion was something that he would have filed on Conner's behalf. 7th Cir. R. 18-11 at 10.[3] The second attorney, who had filed a discharge motion pursuant to Criminal Rule 4 on Conner's behalf, suggested that he did not also seek relief pursuant to the Sixth Amendment because no evidence had been lost to the defense as a result of the delay. 7th Cir. R. 18-11 at 32, 34–35.

The postconviction court concluded that because the Sixth Amendment claim had been raised on direct appeal and decided adversely to Conner, *res judicata* precluded him from raising the claim a second time in the postconviction proceeding. R. 9-10 at 6–7 ¶ 29. Alternatively, the court concluded that the ineffectiveness claim failed on the merits. First, in the court's assessment, Conner's trial attorneys were not deficient for having failed to invoke his Sixth Amendment rights. Second, even assuming that Conner's attorneys should have made a constitutional speedy trial claim, the court was not convinced that such a claim would have resulted in either his discharge or a vacation of his convictions: it appeared that the multiple continuances of the trial date were justified, and although the delay in bringing Conner to trial was lengthy, "any prejudice beyond pretrial incarceration is speculative at best." R. 9-10 at 10 ¶ 36.

Conner then appealed a second time. The Indiana appellate court agreed with Conner in the first instance that *res*

---

[3] Cites to the "7th Cir. R. ___" are to the record in this court; cites to "R. ___" are to the record in the district court.

*judicata* did not bar consideration of his claim that his trial counsel was ineffective for failing to make a Sixth Amendment speedy trial objection, because the court's prior decision on direct appeal had resolved the speedy trial issue based on waiver/forfeiture rather than on the merits of the claim. *Conner v. State*, No. 19A-PC-2106, 2020 WL 1698818, at *4 ¶ 14 (Ind. Ct. App. Apr. 8, 2020) (unpublished). But turning to those merits for the first time, and applying the multi-factor framework for Sixth Amendment speedy trial objections set forth in *Barker v. Wingo*, 407 U.S. 514, 530, 92 S. Ct. 2182, 2192 (1972), the court concluded that "Conner's trial attorneys did not perform deficiently[,] because any constitutional challenge to the pretrial delay would not have been successful." 2020 WL 1698818, at *6 ¶ 22.

Although the court weighed the first three *Barker* factors in Conner's favor, it concluded that the fourth factor, prejudice, tipped the balance decisively in the State's favor. *Id.* (1) With respect to the length of the nearly three-year delay, the court string-cited five state and federal cases in which longer delays were held not to violate the Sixth Amendment and concluded without further explanation that "the delay was not so long that it violated Conner's constitutional right to a speedy trial." *Id.* at *5 ¶ 16. (2) As for the reasons for the delay, the court noted that although the multiple delays due to court congestion (accounting for a total of 728 days) weighed against the State, this factor was negligible "because the delays were justified." *Id.* ¶19.[4] (3) As for whether Conner had

---

[4] The court did not attribute to the State the final, 75-day delay occasioned by the withdrawal of Conner's trial counsel due to a conflict of interest, although the trigger for counsel's recusal was one of the State's

(continued)

invoked his speedy trial right, the court acknowledged that Conner had submitted five *pro se* letters or motions objecting to the delays separate and apart from the one Rule 4 discharge motion that his counsel had filed, but the court also noted that a trial court is "not required" to respond to *pro se* submissions when the defendant is represented by counsel. *Id.* at *6 ¶ 20 (quoting *Underwood v. State*, 722 N.E.2d 828, 832 (Ind. 2000)). Thus, the court gave this factor "little weight." *Id.* (4) As for prejudice, the court noted that Conner made no argument in that regard "beyond the fact of his incarceration," and the record did not otherwise establish that any evidence was lost due to the delay. *Id.* ¶ 21. "Therefore, this factor weighs heavily in favor of the State." *Id.*

Conner filed a petition asking the court to rehear the case, R. 9-15, but the court denied his request.

Conner then sought review in the Indiana Supreme Court. R. 9-16. In his petition for transfer, Conner argued that in assessing the prejudice factor, which the appellate court had found to weigh heavily against him, the court's narrow focus on harm to the defense was inconsistent with U.S. Supreme Court precedent. *Barker* itself recognized two other forms of prejudice resulting from trial delays that the appellate court acknowledged but did not factor into its analysis: "oppressive pretrial incarceration," and "anxiety and concern of the accused." 407 U.S. at 532, 92 S. Ct. at 2193. Although *Barker* deemed impairment of the defense to be the most serious manifestation of prejudice, *ibid.*, the Court had never indicated that it was the only type of prejudice that might warrant

---

informants, whose identity was not disclosed until the morning of trial set for April 6, 2015.

relief. To the contrary, the Court in *United States v. Marion* said that "the major evils protected against by the speedy trial guarantee exist quite apart from actual or possible prejudice to an accused's defense." 404 U.S. 307, 320, 92 S. Ct. 455, 463 (1971); *see also Moore v. Arizona*, 414 U.S. 25, 26–27, 94 S. Ct. 188, 190 (1973) (per curiam) ("prejudice to a defendant caused by delay in bringing him to trial is not confined to the possible prejudice to his defense in those proceedings"); *United States v. MacDonald*, 456 U.S. 1, 8, 102 S. Ct. 1497, 1502 (1982) ("The Sixth Amendment right to a speedy trial is … not primarily intended to prevent prejudice to the defense caused by the passage of time; that interest is protected primarily by the Due Process Clause and by statutes of limitations."). R. 9-16 at 7–8. Conner pointed out that the Indiana Supreme Court itself, applying the *Barker* factors, had granted relief to a defendant whose trial had been delayed for a total of 1,291 days–1,029 of which the defendant had spent in jail–notwithstanding the fact that the defendant could not "point to particular prejudice resulting from his prolonged delay for trial, such as a crucial witness of his becoming unavailable during this time[.]" *Logan v. State*, 16 N.E.3d 953, 964 (Ind. 2014) (footnote omitted). Because the defendant could identify no specific prejudice apart from "oppressive pretrial detention," the court had weighed the prejudice factor "only moderately" in the defendant's favor. *Id.* Nonetheless, in combination with the other *Barker* factors, that had been sufficient for the court to order that the defendant be released from prison and that his conviction be vacated. *Id.* at 964, 965. Conner thus posed the question: "If Scott Logan's 1,029 days in jail awaiting trial weighed the speedy trial prejudice factor moderately in his favor, how could Marcus Conner's 1,034 days in jail awaiting trial weigh the speedy trial prejudice factor 'heavily **against'**

him? R. 9-16 at 9 (quoting 2020 WL 1698818, at *6) (emphasis in Conner's petition for transfer).

The Indiana Supreme Court denied Conner's petition for transfer by a 3-2 vote. *Conner v. State*, 153 N.E.3d 1108 (2020) (table); R. 9-19.

Shortly before the Indiana Supreme Court denied review, public defender Michael Sauer, who was representing Conner in the post-conviction proceedings, initiated an email exchange with Michael Ausbrook, a habeas corpus practitioner who teaches habeas litigation at Indiana University's Maurer School of Law. Sauer initially wanted to know whether Ausbrook might be interested in representing Conner in connection with his anticipated habeas petition: the Indiana Public Defender's office did not represent clients in federal habeas proceedings, and Sauer had no experience with such proceedings. Ausbrook thought that the Sixth Amendment speedy-trial claim might be worth pursuing in a cert. petition before Conner sought relief in habeas. R. 12-1 at 3–4; R. 12 at 3–4 (Sauer aff. at 1-2 ¶ 4).

The possibility of a cert. petition prompted Sauer to consider the time remaining to Conner in which to file his habeas petition. Section 2244(d)(1)(A) allows a prospective petitioner one year from the date on which his conviction becomes final on the conclusion of direct review (or the expiration of time for seeking such review) to file his habeas petition. Section 2244(d)(2) provides further that, in the event the petitioner files an application for postconviction relief, the one-year period remains tolled so long as that application remains pending in state court. Some 164 days of the one-year period had passed between the date on which the Indiana Court of Appeals affirmed Sauer's conviction on direct review (and the

time for seeking discretionary review from the Indiana Supreme Court had expired) and the date on which Conner filed his postconviction petition. Once the Indiana Supreme Court denied Conner's petition for transfer—which it did on September 24, 2020—the state postconviction proceedings were at an end.

Conner had 90 days from the date of the Indiana Supreme Court's order in which to file a cert. petition, U.S. Supreme Ct. R. 13(1), and Sauer wondered whether the one-year habeas clock would remain paused during that period. So he asked Ausbrook, again via email, "Does the habeas clock remain tolled for 90 days after transfer is denied, regardless of whether a cert[.] petition is ultimately filed?" R. 12-1 at 2. Ausbrook replied: "The clock only remains stopped if a cert. petition is actually filed. It's not like after a direct-appeal decision when you get the 90 days regardless of whether a cert. petition is filed." R. 12-1 at 1.

This advice was wrong. Although a petition for certiorari does toll the habeas clock when filed at the conclusion of state proceedings on direct appeal, *see Jimenez v. Quarterman*, 555 U.S. 113, 119–20, 129 S. Ct. 681, 685–86 (2009), at the post-conviction stage, once the proceedings in state court have concluded, the one-year limitations period for filing a federal habeas petition begins to run without regard to whether a cert. petition is filed. In other words, even if such a petition is filed, the limitations period continues to run while that petition is pending before the U.S. Supreme Court. *Lawrence v. Florida*, 549 U.S. 327, 332, 127 S. Ct. 1079, 1083 (2007). Sauer relied on Ausbrook's advice as to tolling without conducting any independent research of his own to determine its accuracy. R. 12 at 4 (Sauer aff. at 2 ¶ 8).

Within days of the exchange with Ausbrook, Sauer spoke with Conner. Sauer's appointment to represent Conner would come to end once the post-conviction proceedings concluded in state court. Conner told Sauer that he intended to file a federal habeas petition with the help of either a fellow inmate or private counsel. But Sauer told Conner to wait until Sauer had decided whether to file a cert. petition. Sauer assured Conner that a cert. petition would stop the clock on filing a habeas petition. R. 12 at 4 (Sauer affidavit at 2 ¶ 7).

On February 20, 2021, Sauer and Ausbrook filed a cert. petition on Conner's behalf. R. 9-20; R. 12 at 5 (Sauer aff. at 3 ¶ 9). That petition again highlighted the Supreme Court jurisprudence recognizing that prejudice resulting from pretrial delays is not limited to impairment of an accused's defense. R. 9-20 at 20–22 (cert. petition at 8–10). The petition also documented the division among lower federal and state courts as to whether prolonged pretrial incarceration akin to that experienced by Conner was cognizable as prejudicial to the accused in and of itself. R. 9-20 at 22–36 (cert. petition at 10–24). Among the conflicting authorities noted was our own decision in *United States v. Oriedo*, 498 F.3d 593, 600 (7th Cir. 2007), which recognized that a 35-month delay in bringing the defendant to trial "no doubt created some of th[e] sort of prejudice" that the Supreme Court had recognized as resulting from interference with the defendant's liberty and separation from his job, family life, and normal day-to-day activities. R. 9-20 at 23 (cert. petition at 11).

The Supreme Court denied the petition on April 26, 2021. *Conner v. Indiana*, 141 S. Ct. 2574 (2021). The next day, Sauer sent Conner a letter advising him of the denial and informing

him that he had about 200 more days left on the one-year clock to file a habeas petition. R. 12 at 5 (Sauer Aff. at 3 ¶ 11).

In fact, by that time, the one-year period for filing such a petition had already expired. As noted, some 164 days of that period had run before Conner filed his petition for post-conviction relief. Once the Indiana Supreme Court denied review in the post-conviction proceedings on September 24, 2020, the clock began to run anew; Sauer's filing of the cert. petition had no effect in that regard. The remaining 201 days ran out on April 13, 2021, roughly a fortnight before the United States Supreme Court denied Conner's cert. petition.

With the help of a fellow inmate who worked in the prison law library, Conner prepared a *pro se* habeas petition and filed it on August 4, 2021—well within the 200-day period Sauer told him remained in which to file the petition (which would not have expired until November). R. 2; R. 12 at 5 (Sauer aff. at 3 ¶ 12).

On the State's motion, the district court dismissed the petition as untimely. *Conner v. Reagle*, *supra*, 2022 WL 1156723. There was no question that Conner had filed the petition outside of the one-year limitations period set forth in section 2244. The court considered whether Conner was entitled to equitable tolling of the statutory deadline but concluded that he was not. The court acknowledged that Conner had been diligent in pursuing his speedy trial rights (beginning with his rejected *pro se* filings in the trial court) and that the lateness of the petition was due to the erroneous advice Conner had been given as to the effect of the cert. petition and Sauer's advice not to file the habeas petition until after the Supreme Court resolved the cert. petition. *Id.* at *4. But the court was not convinced that this mistaken advice rose to the level of an

extraordinary circumstance that would warrant equitable tolling of the habeas deadline. "An extraordinary circumstance justifying equitable tolling must involve something beyond the petitioner's control." *Id.* (citing *Carpenter v. Douma*, 840 F.3d 867, 872 (7th Cir. 2016)). The court noted that this court has repeatedly held that bad advice from an attorney (including miscalculation of a filing deadline) does not constitute an extraordinary circumstance beyond the petitioner's control, 2022 WL 1156723, at *5, and that the Supreme Court itself had held the same in *Lawrence* (which resolved the question of whether a cert. petition filed at the conclusion of post-conviction proceedings in state court stops the habeas clock): "Attorney miscalculation is simply not sufficient to warrant equitable tolling, particularly in the postconviction context where prisoners have no constitutional right to counsel." 549 U.S. at 336–37, 127 S. Ct. at 1085; 2022 WL 1156723, at *5. The district court observed, "Mr. [Conner] received bad advice, but nothing prevented him from conducting his own independent research and filing a *pro se* habeas petition within the one-year statute of limitations. [Conner] does not argue that he lacked access to legal materials or that some other circumstance *outside* his control prevented him from filing his habeas petition on time." *Id.* (emphasis in original). The court went on to reject Conner's suggestion that the court adopt an exception to or modification of the usual rules of equitable tolling analogous to the *Martinez-Trevino* exception to procedural default for ineffective-assistance-of-counsel claims that appear to have some merit. *See Martinez v. Ryan*, 566 U.S. 1, 132 S. Ct. 1309 (2012); *Trevino v. Thaler*, 569 U.S. 413, 133 S. Ct. 1911 (2013). 2022 WL 1156723, at *6.

The district court granted Conner a certificate of appealability on the equitable tolling issue. *Id.* This court

supplemented the certificate to include the merits of Conner's ineffective assistance claim premised on his trial counsel's failure to invoke his Sixth Amendment right to a speedy trial.[5] This court also appointed counsel to represent Conner on appeal. 7th Cir. R. 5.

## II.

The initial, and as it turns out, dispositive issue presented in this appeal is whether Conner is entitled to equitable tolling of the limitations period for filing his habeas petition. We review the district court's decision in this regard for abuse of discretion. *Lombardo v. United States*, 860 F.3d 547, 551–52 (7th Cir. 2017).

Of the 365 days that section 2244(d)(1) allows a state prisoner to seek habeas relief after his conviction becomes final, Conner had 201 days left following the Indiana Supreme Court's denial of his petition for transfer in which to file his habeas petition in federal court. He did not file the petition within that time period in reliance on his postconviction attorney's mistaken advice that the habeas deadline would remain tolled so long as the cert. petition counsel filed on Conner's behalf in the U.S. Supreme Court remained pending. Conner avers, and his former counsel's affidavit confirms, that he would have prepared and filed his habeas petition but for counsel's advice to hold off until the Supreme Court disposed of his cert. petition. Instead, he heeded his counsel's advice and filed the petition after the Supreme Court denied

---

[5] We noted that a certificate of appealability requires a substantial constitutional question as opposed to a procedural question of timeliness. 7th Cir. R. 5 (citing *Davis v. Borgen*, 349 F.3d 1027, 1029 (7th Cir. 2003); 28 U.S.C. § 2253(c)(2)).

certiorari review. By then, the one-year filing deadline specified by section 2244 had expired.

Nonetheless, the one-year period is subject to equitable tolling. *Holland v. Florida*, 560 U.S. 631, 648–49, 130 S. Ct. 2549, 2562 (2010). Equitable tolling requires a petitioner to show that (1) he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his path and prevented him from meeting the filing deadline. *Ibid.* Equitable tolling is a remedy reserved for the exceptional case and is therefore rarely granted. *E.g., Carpenter v. Douma, supra*, 840 F.3d at 870.

The State concedes that Conner has pursued his rights diligently: notwithstanding his trial counsel's failure to make a constitutional speedy-trial objection, Conner did attempt to raise his speedy trial rights in the trial court, only to have his objections ignored because he was represented by counsel. He attempted to pursue those rights on direct appeal, but the appellate court found that he had forfeited his Sixth Amendment speedy trial claim because his lawyer never invoked the Sixth Amendment in the trial court. Conner then attempted to vindicate his speedy trial rights by means of an ineffective assistance claim, which he pursued all the way through the postconviction proceedings at each level of the Indiana courts, without success.

The hurdle that Conner cannot surmount is the requirement that he identify some extraordinary circumstance that prevented him from filing a timely habeas petition. To qualify as extraordinary, the circumstance that prevented the petitioner complying with a deadline must have been an external obstacle that impeded the presentation of his claim to the court, *Menominee Indian Tribe of Wis. v. United States*, 577 U.S.

250, 256–57, 136 S. Ct. 750, 756 (2016); *Lombardo*, 860 F.3d at 552, in other words, something that was beyond his control, *Menominee Tribe*, 577 U.S. at 256–57, 136 S. Ct. at 756; *Carpenter*, 840 F.3d at 872 (citing *Socha v. Boughton*, 763 F.3d 674, 686 (7th Cir. 2014)). Negligence on the part of the petitioner's counsel, including counsel's ignorance or miscalculation of a deadline or the failure to do sufficient legal research to ascertain the deadline, is ordinarily an insufficient basis in and of itself for equitable tolling, as it is not an external obstacle. *Holland*, 560 U.S. at 651–52, 130 S. Ct. at 2564 (citing *Lawrence*, 549 U.S. at 336–37, 127 S. Ct. at 1085; *Lombardo*, 860 F.3d at 552 (collecting cases); *see also Moreland v. Eplett*, 18 F.4th 261, 271 (7th Cir. 2021) (quoting *Perry v. Brown*, 950 F.3d 410, 412 (7th Cir. 2020)); *Ademiju v. United States*, 999 F.3d 474, 477 (7th Cir. 2021).

As a factual matter, we can appreciate that Conner was the victim of bad advice from his postconviction counsel. Conner is not a lawyer, and as this case makes all too clear, figuring out whether and when a cert. petition stops the clock on the habeas deadline is a task that can trip up even an experienced lawyer, given that the rules differ for postconviction versus direct review. It was entirely reasonable for Conner to trust that Sauer understood what those rules were. And although Sauer had no responsibility for and no role in preparing and filing Conner's habeas petition, he was responsible, as Conner's postconviction counsel, for filing the cert. petition. So when Sauer, in that capacity, told Conner to delay filing his habeas petition until Sauer decided whether to prepare and file a cert. petition, and assured Conner that the habeas deadline would remain on pause so long as that petition was pending before the Supreme Court, it was both foreseeable and understandable that Conner would heed that advice. Sauer puts

it this way in his affidavit: "I prevented Mr. Conner from timely filing a habeas petition by assuring him the one-year habeas clock would remain tolled while his collateral review petition was pending. I have no doubt he would have filed a timely habeas petition had I not told him to wait. R. 12 at 5 (Sauer aff. at 3 ¶ 15).

As a legal matter, however, Conner is charged with the acts and omissions of his counsel, including his counsel's mistakes. *Maples v. Thomas*, 565 U.S. 266, 280–81, 132 S. Ct. 912, 922 (2012); *Coleman v. Thompson*, 501 U.S. 722, 753, 111 S. Ct. 2546, 2566–67 (1991); *Crutchfield v. Dennison*, 910 F.3d 968, 973 (7th Cir. 2018). However erroneous the advice Sauer gave Conner regarding the timing of his habeas petition, then, it does not qualify as an *external* obstacle that might warrant equitable tolling. We take Conner's point that he was prepared to draft and file his habeas petition on time and would have done so but for Sauer's advice to hold off while Sauer filed the cert. petition. But would it have been meaningfully different had Conner asked Sauer in the first instance what the deadline for his habeas petition would be and when he should file it, and Sauer had given him the same advice? Or for that matter, had Sauer remained as Conner's counsel and prepared and filed the habeas petition himself—late—after the cert. petition was denied? In all three of these scenarios, the source of the problem is the same: the lawyer's mistake as to the tolling effect of the cert. petition. And the law regards this as an internal rather than an external obstacle, just as it would if Conner had erroneously calculated the filing deadline himself.

Things might be different had Sauer refused to turn over case files that Conner needed to prepare his habeas petition, for example, or Conner's access to the prison library was so

limited as to prevent him from doing the necessary legal re-
search to complete his petition on time. *Cf. Holland*, 560 U.S.
at 652–54, 130 S. Ct. at 2564–65 (remanding for reconsidera-
tion of whether equitable tolling might be warranted where
habeas petitioner's lawyer, *inter alia*, failed to communicate
with him over course of years and failed to inform him in a
timely manner that state supreme court had decided his post-
conviction appeal); *see also id.* 651, 130 S. Ct. at 2563–64 (col-
lecting appellate decisions finding that egregious attorney
misconduct may be considered sufficiently "extraordinary"
to justify equitable tolling of deadline); *Socha*, 763 F.3d at 686
(equitable tolling of habeas filing deadline justified where 90
percent of one-year limitations period had passed before pe-
titioner's postconviction counsel finally turned over case files
to him and thereafter petitioner's access to prison law library
was limited to a total of four hours during the 40 days he had
left to prepare and file his habeas petition). These sorts of cir-
cumstances might qualify as external impediments to Con-
ner's ability to pursue habeas relief in a timely manner.

But there are no such circumstances presented in this case.
Sauer was not working at cross-purposes with Conner when
he told Conner to delay the habeas petition. Based on his
email exchange with Ausbrook, Sauer gave Conner what he
thought was prudent advice about the timing of the habeas
petition given Sauer's intent to file a cert. petition first. His
advice was mistaken, but it was given in good faith. The bad
advice from his counsel as to the filing deadline, and only that
advice, was responsible for Conner's failure to meet the dead-
line. Moreover, that advice did not deprive Conner of control
over his own case, and it thus was not an external barrier to
him pursing a timely habeas petition. The Supreme Court's
jurisprudence, and our own, treats this as "garden variety"

attorney negligence that does not warrant equitable tolling. *Holland*, 560 U.S. at 651–52, 130 S. Ct. at 2564 (citing *Lawrence*, 549 U.S. at 336, 127 S. Ct. at 1085); *Lombardo*, 860 F.3d at 552–55; *Obriecht v. Foster*, 727 F.3d 744, 749–50 (7th Cir. 2013); *Modrowski v. Moto*, 322 F.3d 965, 967–68 (7th Cir. 2003).

Nor are we convinced that the *Martinez-Trevino* framework for procedural default helps Conner here. *Martinez* and *Trevino* recognize a limited exception to procedural default for a substantial claim of trial-counsel ineffectiveness which, as a matter of state law, could be raised no sooner than a postconviction proceeding but was not raised in such a proceeding owing to the ineffectiveness of a petitioner's postconviction counsel. *Martinez*, 566 U.S. at 8–17, 132 S. Ct. at 1315–20; *Trevino*, 569 U.S. at 421–29, 133 S. Ct. at 1916–21. Conner argues that he has a meritorious claim that his trial attorneys were ineffective for failing to raise his constitutional right to a speedy trial which, absent a modification of equitable tolling doctrine akin to the procedural default exception recognized in *Martinez* and *Trevino*, cannot be heard by a federal court due to his postconviction counsel's negligent advice about the habeas deadline. Yet, we ruled out invocation of the *Martinez-Trevino* framework in the equitable tolling context in *Lombardo*, 860 F.3d at 561. In *Lombardo*, the petitioner was seeking relief under 28 U.S.C. § 2255, arguing that his federal convictions and life sentence were the product of his trial counsel's ineffectiveness. But the attorney representing him in the section 2255 proceeding had miscalculated the deadline for the section 2255 motion and had filed it late. Consistent with our analysis here, we concluded in *Lombardo* that the negligence of counsel did not constitute an extraordinary circumstance justifying equitable tolling of the filing deadline. 860 F.3d at 552–55. "The mistake by Lombardo's counsel in identifying

the correct filing deadline was neither extraordinary nor beyond Lombardo's control." *Id.* at 552–53. Looking to the *Martinez-Trevino* framework, Lombardo, like Conner here, urged us to create a special exception to the statute of limitations for trial-counsel ineffectiveness claims which would recognize section 2255 counsel's ineffectiveness as an extraordinary circumstance supporting equitable tolling. We flatly rejected Lombardo's invitation to do so, reasoning that it would be contrary to the Supreme Court's decisions in *Holland* and *Lawrence*, both of which made clear that simple negligence in calculating a filing deadline is not an extraordinary circumstance warranting tolling, as well as the many decisions from this court reaffirming that point. *Id.* at 557–58. We added that "importing *Martinez*'s framework into the equitable tolling context would greatly erode the statute of limitations," in that it would potentially enable both represented and unrepresented petitioners whose trial-counsel ineffectiveness claims had sufficient merit, and who had otherwise exercised reasonable diligence in pursuing those claims, to characterize mistakes with respect to the statute of limitations as "extraordinary." *Id.* at 559–60.

> That would effectively transform the statute of limitations into a mere safe-harbor provision, as petitioners could still file their ineffectiveness claim at any time so long as they have exercised reasonable diligence. Equity does not require, and precedent does not permit, such an undermining of the congressionally enacted statute of limitations.

*Id.* at 560–61. *Lombardo* closes the door on Conner's argument. *See also Lambrix v. Sec'y, Fla. Dep't of Corr.*, 756 F.3d 1246, 1262

(11th Cir. 2014) (*Martinez* has no application to section 2244(d)'s time limit on petition for relief under section 2254); *United States v. Robinson*, 762 F. App'x 571, 576–77 (10th Cir. 2019) (holding same with respect to 28 U.S.C. § 2255 motions for relief from federal convictions and sentences) (collecting cases); *Berry v. Montgomery*, 757 F. App'x 557, 560 (9th Cir. 2018) (holding same with respect to 28 U.S.C. § 2244(b)(1) bar to second or successive habeas petitions under section 2254).

In sum, we find no abuse of discretion in the district court's decision declining to equitably toll the limitations period governing Conner's section 2254 petition. Because we affirm the district court's decision on the equitable tolling issue, we do not reach the merits of his underlying claim of attorney ineffectiveness.

## III.

Conner has not been well served by our adversarial legal system. The one and only mistake he made in pursuing his claim of trial counsel ineffectiveness was to heed his postconviction lawyer's advice as to the timing of his habeas petition. There was no evident reason for him not to do so: We routinely encourage litigants like Conner, who lack legal knowledge and training, to heed the advice of their counsel. In this case, however, Conner's lawyer made a mistake, and as a matter of law, Conner must be saddled with that error. As a result, his habeas petition was untimely filed, and it was properly dismissed on that basis. We AFFIRM the district court's judgment. We commend the counsel we appointed to represent Conner, Christopher Keleher, for the excellent job he has done in representing Conner in this appeal.